# McCOSKER & MOLLOY vs. JOHN T. C. BANKS AND WIFE.

*Bills of Exceptions—Promissory Note Procured by Fraud—Knowledge of Fraud by Endorsee—Burden of Proof to show Good Faith—Proof of Want of Notice by a Firm—Notice to one Partner—When Existence of Partnership to be Found by the Jury.*

Where a number of prayers for instructions to the jury are submitted to the trial Court at the same time, the ruling of the Court upon them is a single act, and only one bill of exception should be taken.

Where in an action on a promissory note by a partnership composed of two persons, who were the endorsees of the note, the defendant gave testimony showing that the note was obtained by the fraud of the payee, it is not competent to prove that the plaintiffs took the note in good faith by the testimony of *one* of the plaintiffs that the *firm* was not aware of any fraud practised by the payee in obtaining the note.

While one member of a firm may be ignorant of defects in the origin of a promissory note, another member of the firm may have full knowledge of such defects, and since this knowledge of one would be sufficient to charge all with notice, the ignorance of one partner cannot be treated as the ignorance of the others.

Whenever it becomes necessary for a partnership to show that they acquired a promissory note by endorsement, in good faith, without knowledge or notice of its original infirmities, such want of knowledge must be shown as to all the partners ; and as one partner cannot give evidence that his co-partner was ignorant of a particular fact, except by testifying to the co-partner's declaration, which would be inadmissible, it follows that each partner must show his want of knowledge by his own testimony, or that other facts must be submitted to the jury from which the absence of such knowledge may be legitimately inferred.

In an action by a firm the defendant specially denied in his pleadings that a partnership existed between the plaintiffs. *Held*, that prayers which do not leave it to the jury to find whether the plaintiffs are partners or not are defective.

When in an action by the holder of a promissory note against the maker the defendant shows that the note was procured by the fraud of the payee, the burden of proof is shifted, and it is then incumbent

upon the plaintiff to show that he or some preceding endorser took the note in good faith for value before maturity, and without knowledge or notice of the fraud.

Appeal from the Circuit Court for Prince George's County (BROOKE, J.),

The cause was argued before McSHERRY, C. J., BRYAN, ROBERTS and BOYD, JJ.

*C. A. M. Wells* and *D. E. Graves* for the appellants.

*F. Snowden Hill* (with whom was *James C. Rogers* on the brief), for the appellees.

McSHERRY, C. J., delivered the opinion of the Court.

This case is before us for the second time. The former appeal is reported in 82 Md. 518. As presented now, the record contains six bills of exception. One of these relates to the admissibility of evidence, and the others to rulings of the Circuit Court for Prince George's County in rejecting five prayers presented by the plaintiffs for instructions to the jury. The prayers having all been submitted at the same time and forming a series of consecutive propositions, the ruling of the Court upon them was a single act and not five separate and distinct decisions; and, consequently, one exception if properly taken and executed would have been sufficient to embrace the whole. *Ellicott* v. *Martin, &c.,* 6 Md. 517. The practice of embodying each prayer in a separate exception though it prevailed half a century ago has long since been abandoned as one that served no useful purpose.

The action is in assumpsit. The plaintiffs, who are the appellants, sued in their firm name and style as partners. They declared on a promissory note made by the defendants, the appellees, and payable to one P. O'Brien or order and by him endorsed to them ; and they added the common money counts. The defendants pleaded that they never promised as alleged; that the note sued on was procured

by fraud, of which the plaintiffs had knowledge when it was indorsed to them; and the defendants specially denied that there was a partnership existing between the plaintiffs. Upon the issues joined on these pleas the case proceeded to trial before a jury. The verdict and judgment were for the defendants and the plaintiffs have appealed.

The plaintiffs offered evidence tending to prove their co-partnership, the signatures to the note sued on, its non-payment and the indorsement of it by O'Brien and there rested. The defendants then gave testimony designed to show that the note was procured by the fraud of O'Brien, the payee, and in rebuttal Molloy, one of the plaintiffs, was placed upon the stand, and testified that he had no knowledge of any fraud practiced by O'Brien in the obtention of the note. He was then asked whether or not the *firm* of McCosker and Molloy were aware of any fraud practiced by O'Brien in the obtention of the note. To the admissibility of this question the defendants objected, but the Court permitted the witness to answer, reserving the right to rule the answer out. The witness replied that the *firm* of McCosker and Molloy were not aware of any fraud in the obtention of the note. Thereupon the defendants asked the Court to strike out the answer so given, and this the Court did, and the plaintiffs excepted. This ruling is the one complained of in the first bill of exceptions.

It will be observed that the question sought to elicit from the witness an answer as to whether the *firm* of McCosker and Molloy had knowledge of the alleged fraud on the part of O'Brien in the obtention of the note, and that the answer actually given and subsequently stricken out was that the *firm* had no such knowledge. The word *firm* is equivalent to partnership and signifies the name under which any house of trade is established or conducts business; but a firm is not a being or entity distinct from the individuals who compose it. Knowledge or ignorance of a firm must consequently

be the knowledge or the ignorance of the persons who constitute the firm. *Stewart* v. *Katz*, 30 Md. 344. Now, whilst notice to one member of a firm is notice to all the members, precisely as notice to an agent is notice to his principal; it by no means follows that the ignorance of one member, or his want of notice, is the ignorance or want of notice of the others. Ignorance of a particular fact, that is, want of knowledge of that fact, consists in this, that the mind, though sound and capable of receiving an impression, has never acted upon that subject because that subject has never been brought to the notice of the perceptive faculties. Ignorance is a negative condition of the mind, and that condition is communicable to others only by some act or by some declaration. Whether an individual is ignorant of a particular fact depends in no measure upon the want of knowledge of some one else as to the same fact, however closely allied the latter may be to the former; but the existence of such ignorance must, as to each individual, be sought by other methods consistent with the settled rules of evidence. Hence when it becomes incumbent upon a plaintiff to show that he was ignorant of imputed fraud affecting the validity of a promissory note which he has acquired by endorsement he obviously cannot discharge the burden resting upon him by showing through other persons his own declarations, for that would be but hearsay. As the state of his own mind—its want of knowledge of the alleged fraud—is an essential element of his case he must prove that want of knowledge by legally competent evidence. The testimony of some one else that the plaintiff was ignorant of the imputed fraud would of necessity be but the conclusion of the witness derived from the plaintiff's own declarations, or adduced from other circumstances. As a party cannot offer in evidence in his own behalf his own declarations, and as the conclusions of the witness deduced from other circumstances are, in such instances, not facts to the existence of which the witness can testify, it is manifest that neither of these methods would be competent to establish

ignorance or a want of knowledge in the plaintiff. But a witness would be at liberty to depose to facts within his own knowledge, from which facts a jury might infer the existence of ignorance as to a given subject in another. Whilst one member of a firm may be ignorant of defects in the origin of a promissory note, another member of the same firm may have full knowledge of such defects; and this knowledge of the one would be sufficient to charge all, and therefore the ignorance of the one cannot be treated as the ignorance of the others. *Frank* v. *Blake*, 58 Iowa, 750. As a consequence, whenever it becomes necessary for the members of a co-partnership to show that they acquired a promissory note by indorsement in good faith without knowledge or notice of its imputed original infirmities, such want of knowledge must be shown as to all the partners; and as one partner cannot give evidence that his copartner was ignorant of a particular fact except by repeating or testifying to the copartner's declaration which would be clearly inadmissible, it results that each partner must show his want of knowledge by his own testimony, or that other facts must be submitted to the jury from which they may legitimately infer the absence of such knowledge. Nothing of this kind was attempted in the case at bar, but the answer given by the witness that the *firm* had no knowledge of the imputed defects was merely an effort to prove by one partner the negative mental state—the absence of knowledge of the other partner. The Circuit Court was clearly right in excluding the answer.

The first, third, fourth and fifth prayers were properly rejected. They all direct a verdict for the plaintiffs without leaving to the jury to find whether the plaintiffs were partners. The issue was raised by the pleadings as to whether the plaintiffs were partners. This threw upon them the burden of proof and whilst they adduced a witness to establish the affirmative, the credibility of that witness was solely for the jury. They had the right to disbelieve him and no action of the Court could lawfully restrict the exer-

cise of that province of the jury. The prayers just indicated wholly omitted to submit to the jury the finding of the fact of a partnership and had they been granted would have permitted a verdict for the plaintiffs even though the jury had concluded that there was no partnership existing between the plaintiffs. There was no error in rejecting these prayers. *The Charleston Ins. and Trust Co.* v. *Corner*, 2 Gill, 410. What we have said in disposing of the first exception is also applicable to the fourth prayer and furnishes another reason for the rejection of that prayer.

The second prayer as offered was rejected, but as amended by the Court, was granted. As offered, it asked the Court to say to the jury that if they found that the note sued on was obtained by fraud, practiced by O'Brien, the plaintiffs would still be entitled to recover, if the jury believed the note was acquired by the plaintiffs by indorsement for value before maturity, without notice of any fraud practiced by O'Brien; but the Court amended it by adding these words: "and the burden of proof is upon the plaintiffs to show that they had no knowledge of the fraud." There can be no question as to the correctness of the instruction as granted. Through a series of cases, beginning with *Totten* v. *Bucy*, 57 Md. 452, and followed by *Crampton* v. *Perkins*, 65 Md. 22; *Williams* v. *Huntington*, 68 Md. 590; *Griffith* v. *Shipley*, 74 Md. 591; *Cover* v. *Myers*, 75 Md. 406, and *Banks* v. *McCosker and Molloy*, 82 Md. 518; the law of Maryland on this subject has been consistently declared. In an action against the maker of a negotiable note, the indorsee " has nothing to do in the opening of his case but to prove the signature to the instrument and introduce it in evidence; for the instrument goes to the jury, with the legal presumption that the plaintiff became the holder of the same for value at its date, or before maturity, in the usual course of business, without notice of anything to impeach his title. He is at liberty to rest upon this presumption, and is not bound, in the first instance, to show the circumstances under which he obtained the note, or that he paid

value for it.    But if the defendant shows by such proof as
may be properly left to the jury to consider, that the in-
strument was procured by fraud, or was fraudulent in its
inception, or that the consideration was illegal, or that it
had been lost or stolen before it came to the possession of
the holder, the burden of proof is changed, and it is then
incumbent upon the plaintiff to show that he acquired the
note *bona fide* for value, in the usual course of business, be-
fore maturity, and under circumstances that create no pre-
sumption that he knew of the existence of the facts that im-
peached the validity of the instrument.    This is a well-es-
tablished rule as applicable to negotiable instruments ; and
it is said to be wise and salutary in the protection that it
affords.    It proceeds upon the presumption that the person
who has been guilty of the fraud or illegality in obtaining
the instrument would dispose of it, and would place it in
the hands of another person to sue upon it ; and it is be-
cause of such presumption that the proof of fraud, illegality
or loss, casts upon the holder the burden of showing that
he is a *bona fide* holder for value, or under what circum-
stances, and for what value he became the holder of the
note." *Totten* v. *Bucy, supra.*    The instruction we are con-
sidering proceeds upon the hypothesis that fraud had been
practised in the obtention of the note, and the only criticism
upon it is that the Court erred in declaring that the burden
of proof was in consequence cast upon the appellants, to
show that they had no knowledge or notice of that fraud
when they acquired the note from O'Brien.    Upon the
proof of fraud in the origin of the note the burden is
shifted, and the indorsee must show that he or some pre-
ceding indorsee took the note in good faith for value be-
fore maturity, without knowledge or notice of the fraud.

    There being no errors in the rulings excepted to, the
judgment appealed from will be affirmed.

                    *Judgment affirmed, with costs above*
                            *and below.*

(Decided November 19th, 1896).