## THE CALVERT BANK *vs.* J. KATZ & COMPANY.

*Promissory Note Endorsed in Firm Name by One Partner for His Use —Acquiesence in Claim Against Partnership—Estoppel—Interest— Evidence.*

One of the two members of a firm made a promissory note payable to one H, which was endorsed by the maker in the firm name. This note was discounted by the defendant bank. The firm was subsequently dissolved and plaintiff, the other member of it, who had not made the note, continued his account with the bank. The note became due after the dissolution of the firm and the bank charged it to plaintiff's account Plaintiff did not then object to the right of the bank to make such charge, and when his bank-book was balanced he received this note as one of his vouchers. Plaintiff sued H and the other endorsers of the note and recovered judgment. Afterwards he brought this action against the bank alleging that the charge of the note against his account was wrongful. *Held*, that even if the note was not originally endorsed for the purpose of the partnership so as to impose a liability upon the plaintiff, yet since he had acquiesced in the bank's action in charging the note to his account, and had obtained the same from the bank and sued the endorsers, he is estopped to claim now that the money was improperly charged to his account.

A prayer is erroneous which assumes the existence of facts and takes from the jury the finding of the same, since they have the right to refuse to believe evidence although it is uncontradicted.

The allowance of interest on an open account is a matter within the discretion of the jury.

Upon the trial of a case in one of the Courts in Baltimore City the original papers in another case tried in another Court of said city are admissible in evidence without a transcript under seal of the docket entries therein, since such transcript is not required under the Act of 1898, ch. 123, sec. 388.

Appeal from the Baltimore City Court (HARLAN, C. J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*S. S. Field* (with whom were *Gill & Preston* on the brief), for the appellant.

*Forrest Bramble* (with whom were *William T. Larkin* and *Wm. G. Towers* on the brief), for the appellee.

JONES, J., delivered the opinion of the Court.

In this case the appellee was a depositor in the bank of the appellant corporation, and on the 25th day of April, 1903, brought an action of *assumpsit* against the appellant in the Baltimore City Court. The action was brought under the Rule Day Act and the account filed with the *narr.*, which contained only the common counts, shows that the cause of action was the claim of a balance due the appellee as of December 23rd, 1901, on a statement of account with the appellant. The appellee obtained a judgment and the appellant brought this appeal and alleges error in the rulings of the Court below in four several exceptions—three of these being to rulings in relation to the admission of evidence and one to action upon the prayers.

From the disclosures of the record the suit appears to have grown out of the following facts. Prior to September 1st, 1901, there existed a partnership between Jacob Katz, the appellee here, and Louis Katz, his brother, under the firm name of J. Katz & Co. In August, 1901, prior to the dissolution of the firm, which will be presently mentioned, Louis Katz made and signed a promissory note, payable to H. J. Hahn, and endorsed the same in the name of the firm. This note was for $200 at four months and was discounted for H. J. Hahn by the appellant bank in the early part of August, 1901, and was in renewal of a note of $300 similarly endorsed and previously discounted by the appellant—the difference between the two notes being paid to the bank. The firm dissolved September 1st, 1901, and Jacob Katz, appellee, continued in business under the same firm name; and in November

following opened an account with the appellant in the firm name, but informed the officials, or some of them, of the bank "that he had no partner, that he was trading as J. Katz & Co." The note of $200 fell due in the early part of December, 1901, and not having been paid it was protested and notice of protest was sent in usual course. Shortly thereafter some of the checks of the appellee having been refused payment by the bank he called at the bank about Christmas and "saw the president with reference" to the refusal to pay the checks and was informed that he had no money to the credit of his account because the note of $200 which has been mentioned had been charged to his account.

It does not appear that the appellee at the time made any protest against this action of the bank or any objection on the score of not being liable on the note; but the president of the bank testified that at the interview between him and the appellee about the time indicated, the latter said that charging the note to his account put him to considerable inconvenience and requested that the matter of charging the note be allowed to go over until after the first of the year, and said if that was done "it would be all right." This request was refused. Subsequently (it does not appear just when) the appellee's attorney wrote to the president of the bank and was invited to call, which he did, and the president, as the attorney testifies, "explained to him about the note and showed him the note." No protest against, or objection to, the action of the bank on the score of non-liability of the appellee on the note appears to have been made at this interview. On the contrary, the attorney subsequently got the bank-book of the appellee balanced; and received with the book all of the vouchers for the charges, including the note, which would hardly have happened upon an intimation that the charging of the note was to be disputed. The note has been retained ever since by the appellee, or his attorney, and is now reported as lost. It does not appear that the bank (appellant) ever heard further, as to the note, or as to its action in putting it to the appellee's account, until this suit was brought in April, 1903. In the

meantime, in August, 1902, the appellee brought suit against H. J. Hahn, the payee of the note, the cause of action in which was in part the $200 note in question and recovered a judgment in the suit which included the item of the note.

Now if we assume the foregoing facts to be in proof, the note, which is the basis of the whole controversy here, was made and endorsed by the partner of the appellee while the partnership existed.  Upon the face of the transaction it was intended to impose a liability upon the partnership by the indorsement made ; and most likely this was what gave the note the credit that enabled the payee to discount it.  While it may not have been a partnership transaction it purported, on the face of it, to make the partnership liable.  Nothing appears in connection with the endorsement of the note or its negotiation to show that what was done in that connection was done without the knowledge, consent or authority of the appellee, as a member of the firm.  The case though differing to some extent from the facts in that of *Manning* v. *Hays*, 6 Md. 5, falls within the principle there illustrated where the Court said, "Although it is clear that one partner cannot bind his copartner in regard to a matter which is exclusively his own, yet the fact of its being his private business must affirmatively appear by some fact known, or properly deducible from circumstances which ought to inform a prudent person of the true nature of the transaction."  In this case if there had been anything in the endorsement and negotiation of the note in question, or attending the transaction, to indicate that this particular obligation was executed and delivered for negotiation without the knowledge or consent of the appellee, and was such as he had the right to forbid if it had been an original transaction, yet the inquiry would have had to go further ; for it appears that the particular note here in question was but a renewal of a previous note which had been discounted by the appellant and had the endorsement of the partnership.  *Hopkins* v. *Boyd*, 11 Md. 107.  If then this note, under the circumstances appearing, must be taken to have imposed, as respected the rights of the appellant, an obligation

for its payment upon the partnership of J. Katz & Co., as it existed when the note was made and endorsed, the appellee was bound for its payment since the members of the firm were liable each *in solido* for the debt.

When the other parties to the note defaulted in payment he had his election to pay the note, take possession of it and pursue his remedy against these other parties; but he had no right to the possession of the note to do this until he had first paid it. He could not otherwise deprive the appellant of its muniment of title and the means of pursuing its more convenient remedies for obtaining payment of the obligation or enforcing the same. Under the circumstances appearing here the note in question must be regarded as paid by the appellee by the appropriation of his balance in bank for that purpose. With knowledge that the bank had made or claimed the right to make such appropriation of his balance there was no denial at his interview with the president of his liability for the note or of the rightfulness of the appropriation. The same is to be said of the interview on a subsequent occasion had by his attorney with the same official. After this he possessed himself of the note, and must have known that in doing so he was leading the bank to suppose he was acquiescing in its claim of payment. He took possession of the note and made it his property by pursuing his remedy against other parties to it upon the assumption of the note having been paid by him. Still retaining the muniment of title, which according to his theory belongs to the appellant, he now returns to sue the appellant for the money with which the note was paid. It would be against reason and justice to permit the law to be used in this inconsistent way.

With these observations as to the views and principles to be applied in the facts of the case we proceed to a review of the rulings of the Court which are the subject of exception. The plaintiff offered one prayer which was granted and the defendant offered two, both of which were rejected. The plaintiff's prayer is "that the undisputed evidence in this case shows that the defendant is indebted to the plaintiff in the sum of

one hundred and sixty-seven dollars and fifty-one cents under the pleadings in this case, and their verdict will therefore be for the plaintiff for that amount with interest from December 23rd, 1901, to date, the claim of the defendant to a deduction of $206.51 on account of a note made by Louis Katz to the order of Henry J. Hahn and endorsed by J. Katz & Co., which note was discounted by the defendant and not paid at maturity, not being a proper subject of recoupment in this case."

There was manifest error in this instruction. It usurped entirely the function of the jury. It found for them the ultimate facts, which it was their province to find, to wit, the indebtedness of the defendant and the amount and told them that these facts which had been put in issue by the pleadings and were contested throughout had been established as a verity by undisputed evidence. It is error for the Court to assume the existence of facts and take away from the jury the finding of the same. *Boyd* v. *McCann*, 10 Md. 118–123, citing *Charleston Ins. Co.* v. *Corner*, 2 Gill, 426, 427, where it is said: "Doubtless the jury would have found these facts according to the testimony, but the sufficiency of evidence to satisfy a jury, or the circumstance that it is all on one side, does not authorize the Court to direct the jury that it proves the fact. They have the power to refuse their credit, and no action of the Court should control the exercise of their admitted right to weigh the credibility of evidence."

There was also error in the instruction in its direction as to the allowance of interest. This should have been left to the discretion of the jury. *Curtis* v. *Gibney*, 59 Md. 131–156; *Frank* v. *Morrison*, 55 Md. 399, and cases there cited.

The instruction was also wrong in theory. There was no question of recoupment in the case. The question was whether the plaintiff should not be held to have made payment of the note to which the balance of account that he sued for had been applied. If so there was no balance to which he was entitled. The prayers of the appellant were framed or proceeded upon a correct theory; but with the evidence that

ought properly to have been admitted to meet the views herein expressed they do not sufficiently make reference to the evidence in respect to the conduct of the appellee going to estop him on the theory of payment.

In respect to the exceptions upon questions of evidence, there was no error in the ruling in the first exception. Besides this the ruling out of the evidence therein set out became immaterial in view of other evidence in the case. There was error in excluding the evidence offered as stated in the second exception. This went directly to the question of imputed payment of the note therein referred to; and was not obnoxious to the technical objection that it was not accompanied with a transcript under seal of the docket entries in the case, the proceedings in which are set out in the exception, as provided in sec. 66 of Art. 35, Code, 1904, enacted by the Act of 1890, ch. 318. The introduction in evidence of original papers from the Courts of Baltimore City in cases on trial in the Courts of the city is regulated by the later Act of 1898, ch. 123, sec. 388. With proper identification of parties and the subject matter of the suit the evidence embraced in this exception should have been admitted. With the evidence embraced in the second exception thus admitted the ruling in the third exception becomes immaterial. The evidence there offered could only have been received as far as it was confined to proper identification of the matters requiring this in connection with the proceedings offered in evidence as set out in the second exception.

For the errors indicated in the rulings of the trial Court the judgment of that Court must be reversed.

*Judgment reversed with costs to the appellant and new trial awarded.*

(Decided June 21st, 1905.)