## THE OREM FRUIT AND PRODUCE COMPANY *vs.* THE NORTHERN CENTRAL RAILWAY COMPANY, AND THE PENNSYLVANIA RAILROAD COMPANY.

*Liability of Initial Carrier—Action for Failure to Ice Refrigerator Car—Evidence.*

When goods are delivered in good condition to an initial carrier to be by it delivered for further transportation to a connecting carrier, and the goods at their destination are delivered in a damaged condition, the burden of proof, in an action against the first carrier, is on it to show delivery in a good condition to the connecting carrier, when such proof is within its power.

Plaintiff shipped a carload of tomatoes in a refrigerator car from Baltimore to Montreal, Canada, under a bill of lading by which the defendant railway companies agreed that the car should be iced at Wilkesbarre, on the line of the defendant, and Oneonta, N. Y., on the line of a connecting carrier. The car was not re-iced at either of these points, because, as testified by the defendant's witnesses, the tanks were nearly full at Wilkesbarre, and under the rule of the defendant, no re-icing is done unless 600 pounds of ice can be put in the tanks. When the car arrived at Montreal the tanks were empty and the tomatoes unmarketable. *Held*, that the jury was erroneously instructed that since it is shown that the defendants performed every duty they owed to the plaintiff in the transportation of the tomatoes, while on their lines, and duly delivered the same to the next succeeding carrier, the verdict must be for the defendants; because, first, this instruction assumed the truth of the evidence offered by the defendants instead of leaving it to the jury to find; and (second), because the rule of the defendant in regard to the quantity of the ice to be put in the tanks has no application, since the bill of lading expressly required the car to be iced at the points mentioned; and (third) because there was no evidence that the contents of the car were in good condition when delivered to the connecting carrier at Wilkesbarre.

In an action against a railroad company for the loss of a carload of tomatoes on account of its failure to cause the refrigerator car in which it was carried to be re-iced at certain points, as stipulated by the bill of lading, a witness cannot testify that the tomatoes would have been pre-

served if the car had been iced at those points, or which of the two would be more important for the icing, unless it be shown that the witness had the requisite knowledge upon which to base an opinion.

*Decided April 4th, 1907.*

Appeal from the Baltimore City Court (WRIGHT, J.)

In the third bill of exceptions plaintiff's counsel asked witness Orem this question: "Which of the two points would be the most important point for re-icing that car and give reasons?" In the fourth bill of exceptions the same witness was asked: "If the car had been re-iced at Wilkesbarre, Pa., and from your knowledge and experience in shipping goods of this character, would it have carried all right?" In the fifth bill of exceptions plaintiff's witness Clogg was asked this question: "From your knowledge of fruit, if the ice tanks of the car in which the crates of tomatoes were shipped had been properly filled with ice at Wilkesbarre, Pa., and Oneonta, N. Y., in what condition should the tomatoes have arrived at Montreal, Canada?" To each one of these questions the defendants objected and the objection was sustained by the Court, and an exception noted by plaintiff.

*Plaintiff's Prayer.*—If the jury shall find from the evidence that the defendants agreed to re-ice the car No. 66540 Pennsylvania Railroad Company, in which the goods of the plaintiff were shipped, at Wilkesbarre, Pa., and that the company could have placed some ice in said car at said point, and did not do the same, and thereby the loss occurred as testified by the plaintiff's witnesses, then their verdict should be for the plaintiff, for the value of the tomatoes at Baltimore, Md., on July 19th, 1904, less $37.50, the amount received for the defective tomatoes at Montreal, Canada, with interest from July 22nd, 1904. (*Rejected.*)

The cause was argued before BRISCOE, BOYD, PEARCE, SCHMUCKER, BURKE and ROGERS, JJ.

*O. Parker Baker* and *George E. Robinson*, for the appellant.

According to the appellees' testimony, the ice melted four inches in going 213 miles to Wilkesbarre, Pa., with a hot car and cargo to start with, with the thermometer at its highest, and twice this amount, or eight inches, in going 167 miles after the cargo had been cooled and the thermometer at a much lower temperature; then all the ice melted in going from Oneonta to Montreal, a distance of 215 miles, with the temperature still lower; in other words, it melted one foot only in going 380 miles from Baltimore to Oneonta, with the hot car and cargo to start with, and then, after car and contents had cooled; the whole car of ice melted in going 215 miles. from Oneonta to Montreal, with the temperature lower. At Montreal the maximum temperature was 72 and the minimum 56 degrees.

Appellees' servants did not examine cargo at either point, so there is no evidence of the condition of cargo at Wilkesbarre, Oneonta or Rouse's Point, although car was unsealed, yet the car (not contents) was inspected at Wilkesbarre. The appellees and the connecting carrier, the Delaware and Hudson Railroad, had a through billing arrangement by which the appellees billed clear through to Rouse's Point, New York, the end of the connecting carrier's line, which facilitates shipments so it does not have to be taken into the yards and a transfer made to the connecting line at Wilkesbarre, the end of appellees' line.

It was shown that if the car had been re-iced or filled with ice at Wilkesbarre on July 20th, 1904, the tomatoes would have arrived at Montreal on July 22nd, 1904, in good condition.

There is no evidence of the condition of the cargo when interchanged at Wilkesbarre, nor do they produce the car inspectors, with the exception of the one who inspected for ice. No evidence is produced to show that their inspection for ice was reasonable or the usual mode, nor was there any evidence that the appellant had notice of the rule that if they could not get 600 pounds of ice in a car they did not put in

any, and therefore the appellant was not bound thereby. *R. R. Co. v. Miller*, 16 Neb. 661.

The prayer granted by the trial Court is defective and erroneous for several reasons:

1. It usurped the province of the jury in passing upon the credibility of the witnesses, who testified in behalf of the appellees. *Calvert Bank* v. *Katz*, 102 Md. 56; *Boyd* v. *McCann*, 10 Md. 118.

2. It assumed the truth of the evidence adduced on behalf of the party who offered the prayer, when it should assume the truth of all the evidence before the jury tending to sustain the claim of the appellant, and all reasonable inferences of fact fairly deductible therefrom, although such evidence be contradicted in every particular by the opposing evidence in the cause. *Jones* v. *Jones*, 45 Md. 154; *McEldery* v. *Flanigan*, 1 H. & G. 308.

"Instructions asked by defendant, which assumes the truth of the evidence offered on its behalf, and withdraws from the jury the consideration of the evidence adduced by the plaintiff are erroneous." *Western Md. R. R. Co.* v. *Kehoe*, 86 Md. 43; *Bank* v. *B. & O. R. R. Co.*, 99 Md. 661; *Peterson* v. *Ellicott*, 9 Md. 52.

3. The Judge, upon this prayer, finds upon the facts and says the appellees have performed every duty they owe the appellant, and thereby makes himself a judge of the facts as well as a judge of the law, as by his rejection of the demurrer, to the appellant's evidence he says there are facts sufficient for the jury to consider, and, by the granted prayer, he says they have disproved these facts by uncontradicted evidence.

4. Because the prayer is too general and does not instruct the jury as to the contract for re-icing the car, which failure to re-ice was the proximate cause of the damage. 2 *Poe's Pl. & Pr.*, sec. 297; *Chew* v. *Beall*, 13 Md. 348.

5. Because uncontradicted testimony is never equivalent to an admitted fact, as the jury may not believe it and this is especially so where the alleged facts are peculiarly within the knowledge of the witnesses. *Mitchell* v. *R. R. Co.*, 124 N. C. 236.

6. Because the evidence may be uncontradicted by eye witnesses, yet may be contradicted by circumstances, which hypothesis this prayer excludes. *Koehler* v. *Adler*, 78 N. Y. 288.

In this case the circumstances prove that the witnesses who inspected for ice at Wilkesbarre and Oneonta, either told an untruth or did not make a proper inspection, because they testified that the ice only melted four inches in going 213 miles from Baltimore to Wilkesbarre, which took twelve hours and thirty-five minutes, and melted twice this much, or eight inches, in going 167 miles to Oneonta, which consumed only eight hours and fifteen minutes, when the temperature was the warmest the first 213 miles and car loaded with hot tomatoes. Then again, the whole car of ice melts in going from Oneonta to Montreal, a distance of 215 miles, when the temperature is still lower.

These facts are also contradicted by the long experience of the witness, Orem, who shipped to the same point, over the same line, and to the same consignee, and in the same summer, who testified that experience had taught him that in warm weather to direct re-icing at two points and in moderate weather at one point, and that appellees selected the points to re-ice.

7. Because the prayer instructs the jury that the appellees performed every duty they owed the appellant in the transportation of the tomatoes, when, as a fact established by the appellee's testimony, they totally failed to perform their contract to re-ice. If this constitutes the performance of duty, we cannot conceive a non-performance.

8. Because after the proof by the 'appellant of the receipt by the appellees of the tomatoes in good condition, and the damage to the cargo, the burden of proof is on the defendants to prove that they delivered the tomatoes to the connecting carrier or to the consignee in the same condition, it being peculiarly and almost solely within its power to make such proof. *Meredith* v. *R. R. Co.*, 137 N. C. 478; *Woods on Railroads*, 1926; *Myrick* v. *R. R. Co.*, 107 U. S. 106, 107; *Green-*

*leaf on Evidence*, vol. I, sec. 79 and sec. 14-W; *Moore on Carriers*, p. 490, sec. 23.

And in the prayer granted by the Court in·this case, he instructs the jury that they have met this burden by "duly delivering the said tomatoes and the car containing them to the next succeeding carrier at the end of their lines, respectively, to-wit: Sunbury, Pa., and Wilkesbarre, Pa.," without reference to the condition of the tomatoes and the contract to re-ice. In all of the connecting carriers cases in Maryland there was proof that the goods were delivered to the connecting carrier in good condition.

9. Because the prayer ignores the fact that the appellees and the Delaware and Hudson R. R. had entered into a "through billing arrangement" whereby the appellees billed all their freight to Rouse Point which was consigned beyond this point, which is the northern end of said connecting carrier's line, and this is done so that the car does not have to go into the yard at Wilkesbarre, Pa., and a transfer made to the connecting carrier, which arrangement prevents a shipper from ascertaining upon which of the two lines the loss occurs.

10. Because the prayer ignores the fact that the proximate cause of the loss was the failure to re-ice at Wilkesbarre, Pa., which fact is supported by the proof of witnesses, Orem and Bohannan, who testify that after *car and contents have cooled and are re-iced*, that ice would remain in the tanks for three or four days. A reasonable inference from this testimony would be that if the car had been re-iced at Wilkesbarre on July 20th, that some of the ice which would have remained there on July 22nd, and the cargo would not have been damaged. "The initial carrier is liable for any loss or injury, directly attributable to its own negligence or of which its own negligence was the proximate cause, although the loss or injury may have occurred or developed on the line of a succeeding carrier." *Moore on Carriers*, 461; *Fox v. R. R. Co.*, 148 Mass. 220; *R. R. Co. v. Anderson*, 3 Tex. Civ. App. 8.

*Shirley Carter*, for the appellees.

As soon as a carrier has promptly and safely delivered

freight carried by it over its line, at the end of its own road, to the next succeeding or connecting carrier, en route, to destination, its liability and responsibility are at an end. Or, as was said by this Court in the Hoffman case, below cited, quoting with approval from the *Myrick case*, 107 U. S. 107. "Each road, confining itself to its common law liability, is only bound, in the absence of a special contract, to safely carry over its own road, and safely to deliver to the next connecting carrier." *Hoffman* v. *Cumberland Railroad Company*, 85 Md. 391; *Western Maryland Railroad Co.* v. *Jacob C. Landis*, 95 Md. 749; *McGann* v. *B. & O. R. Co.*, 20 Md. 202; *B. & O. R. Co.* v. *Green*, 25 Md. 75; *Myrick* v. *Mich. Cen. R. R. Co.*, 107 U. S. 107.

The case at bar cannot, we think, be distinguished from the *Landis case*, 95 Md. 749, as to the application of the above principle to its facts ; since the facts, of the case at bar, are essentially the same, in their legal aspect, as those in the Landis case, so far as the application of the said principle is concerned.

It is clear that the defendants delivered all the tomatoes they received from the plaintiff, and safe and undamaged to the Delaware and Hudson Company at Wilkesbarre.

The undisputed testimony of the defendants shows that they and each of them, performed their full duty to the plaintiff in regard to re-icing the car at Wilkesbarre, while on the Pennsylvania Railroad Company's line at that point ; the bill of lading stipulating that the tomatoes should not only be transported from Baltimore to Montreal, but should be re-iced at Wilkesbarre, Pa., and Oneonta, N. Y.; the former being at the end of the Pennsylvania Railroad Company's line, and at the beginning of the Delaware and Hudson Company's line.

Creager testified "that as inspector for the Pennsylvania Railroad Company he inspected cars for ice; and kept a record of all cars inspected by him," and *referring to his record, testified from it*, "that he inspected this car at Wilkesbarre, Pa., on July 20th, 1904, at 6.15 A. M. for ice; that the ice boxes were nearly full, probably four inches from the top; that

under the *invariable rule* and *regulations* of the Pennsylvania Railroad Company, when boxes are in *that condition* they are *considered full* and no *ice is required;* that as to this car he made the notation in his record '*No ice required;*' that he lifted the lids of the ice boxes on top of the car and saw that the ice was about four inches from the top; and it was a rule of the company, that if you could not get 600 pounds of ice in the tanks, they considered that car full, and they do not put any more in it; as it is such a small quantity, they do not consider it necessary to re-ice the car; because the small quantity of ice that can be put in does not compensate for the time lost in taking the car to the ice house for that purpose."

In addition to the above evidence, is the undisputed evidence of the assistant yardmaster of the Delaware and Hudson Company at Oneonta, who testified that he inspected the car for ice at Oneonta, N. Y., on July 20th, 1904, and found that the ice was about a foot from the top of the boxes. This was about 2.30 P. M. July 20th, 1904, at Oneonta, which we have seen was 165 miles on the Delaware and Hudson Company's road from Wilkesbarre. We note also from this witness' testimony in passing, that the train which took this car from Oneonta at 2.30 P. M. July 20th, 1904, was due at Rouse's Point, which we have seen from Cochran's testimony, was only about 50 miles from Montreal, between 4 A. M. and 5 A. M. July 21st; and yet the car did not arrive at Montreal until July 22nd.

The jury certainly, unless they were allowed to wildly guess and speculate, could not find in this case, from the evidence of Clogg at Montreal, that there was no ice in the car when he examined in there on July 22nd, that therefore the Pennsylvania Railroad Company was negligent as to re-icing the car, at Wilkesbarre in the early morning of July 20th, 48 hours and 424 miles away from Montreal.

The plaintiff's prayer is based on this proposition of law: That since the defendant, the Pennsylvania Railroad Company, on whose line Wilkesbarre is, *agreed to re-ice* the car at that point, and did not put *some ice* in the car at that point, no

matter how small a quantity that "*some*" might have been, yet is liable to the plaintiff, if at any point in the 424 miles to be covered after the car left the defendant's line, and no matter *how long* it took to cover that distance, the tomatoes became ripe, in consequence of there not being a *sufficient quantity* of ice in the boxes, to prevent them ripening. And this, too, without any proof in the case whatever, as to how much ice would be required in the boxes to prevent the tomatoes ripening.

We have seen from the testimony of Creager that when he inspected the ice-boxes at Wilkesbarre, just before the car was delivered to the D. & H. Co. at that point, the ice-boxes were full of ice, within four inches of the tops; that by the regulations of the Pennsylvania Railroad Company boxes, in the condition these were, are considered full; and that a car in that condition should not be delayed on its journey by being taken to the ice-house to put such a small quantity of ice in it, since the time that might be lost in doing so, in the forward movement of the car, would be more deleterious to the freight than all the good that could possibly result from the small quantity of ice put in.

That this is a reasonable regulation, and must therefore be read into the contract to re-ice, when construed by the Court, of course, was considered and passed upon by the lower Court, in granting the defendant's prayer and in refusing the plaintiff's prayer.

That the Court was right in so ruling, is too clear for argument. For not only have carriers the legal right to make reasonable regulations for the proper handling of their and the public's business, but also "Courts will always give to contracts a reasonable construction, and in accordance with what the evidence shows the subject-matter to be and the consequent object of the parties to it." *Chamberlain* v. *B. & O. Railroad Co.*, 66 Md. 518. And since this contract to re-ice at Wilkesbarre is wholly in writing, being one of the stipulations in the bill of lading, its construction is within the peculiar province of the Court, and not for the jury. *Roberts & Co.* v. *Bonaparte*, 73 Md. 191.

Therefore, the sole question here presented to this Court is, was the lower Court right in holding, that under the proper and reasonable construction of the contract to re-ice at Wilkesbarre, the defendant, the Pennsylvania Railroad Company, was not required to put more ice in the boxes at that point, upon finding them in the condition, as to ice, as was shown by the uncontradicted evidence of Creager, *supra?*

Was not the construction put upon the contract by the lower Court a proper and reasonable one, in the light of "the surrounding circumstances and the object of the parties to it?"

If we take the strict meaning of the expression "re-ice at Wilkesbarre," and hold that the carrier must comply strictly with the literal meaning of the words, then, nothing short of removing all the ice that was in the boxes when the car arrived at Wilkesbarre, and refilling the boxes with ice taken from the ice houses at that point, would be a compliance by the carrier with his contract. But when we look at the circumstances and the object of the shipper, and the carrier's duty to him in other respects in connection with re-icing, no such meaning as the above could, with any show of reason, be given to the words.

The object of the shipper, and his only object, is to have his freight carried as quickly as possible to destination; and at the same time to keep the freight cold during the transit. *Quick transportation* of perishable articles, is, obviously, far more important than keeping ice-boxes filled to the brim during transit, if by doing so, time in transportation must be lost; since no. refrigerator car can be made cold enough to wholly stop the process of ripening, as can be done by cold storage apparatus; and, therefore, during all the time of transit, whether the ice-boxes are "chock-a-block" or half or three-quarters full, the fruit is ripening to some extent. For the above reasons, it is obvious, when a car is sufficiently iced to be kept cold, although *some more* ice could be added, a carrier would not be justified in sacrificing precious time, merely to put that *some more ice* in the boxes, that were sufficiently full already to keep the car cold.

In order therefore to prevent the waste of valuable forwarding time, but not overlooking the fact that cars must be sufficieutly iced to keep the fruit cold between icing points, the defendant has made a rule to govern its employees, and to guide and tell them, when *time* must give way to ice, and when *ice* must give way to time. How could perishable freight be handled properly on our railroads without such a necessary and reasonable rule and regulation ? There must be a limit fixed by some one ; and who could be more competent to fix that limit, than those who are most familiar with the circumstances requiring the limit to be fixed ?

Then, since the only object is to keep the freight cold in transit, the evidence of the plaintiff's own witnesses shows that the regulation of the defendant as to re-icing was reasonable, and one that fully accomplished for the plaintiff, the object of having its freight quickly transported and sufficiently iced. For Orem, himself, and his witness, Bohanan, testified that with the temperature at from 97 to 100 degrees, they had had cars standing on the sidings at Baltimore for three days, without re-icing them ; and the contents were kept sufficiently cold. Are we to believe from this statement that at no time in those three hot days the ice was below the level of the tops of the boxes ; and at no time during those hot days it got down as far as four inches from the tops ? We certainly are not asked to believe that. And yet they say the contents kept perfectly in those cars for all those three very hot days. Then was it unreasonable for the defendant to consider a car sufficiently iced, when the ice was within four inches of the top, the car about to move, and to be kept moving, until it reached another icing point only 165 miles away, Oneonta, with the temperature nowhere near 90 or 100 ?

Briscoe, J., delivered the opinion of the Court.

This is a suit brought by The Orem Fruit and Produce Company of Baltimore City, a corporation, organized under the laws of Maryland, against the Northern Central Railway

Company and the Pennsylvania Railroad Company, to recover damages for an alleged breach of contract in failing to safely carry in a refrigerator car four hundred and seventy-nine crates of tomatoes from Baltimore City to Montreal, Canada.

The declaration in substance states that on the 19th of July, 1904, the defendants were common carriers of goods for hire from Baltimore City to divers places in the United States and Canada; that on this date the plaintiff delivered to them, as such carriers, four hundred and seventy-nine crates of tomatoes, of the aggregate value of nine hundred and fifty-eight dollars, to be carried in a refrigerator car from Baltimore to Montreal, Canada, and there to be delivered to J. R. Clogg & Co. ; the defendants at the same time agreeing to re-ice the refrigerator car in which the tomatoes were shipped at Wilkesbarre, Pennsylvania, and Oneonta, New York, but the defendants did not do so. It further states that the defendants wholly neglected their duty in this respect, and by the neglect to safely carry and re-ice the car according to the contract, the tomatoes were wholly lost or destroyed and the plaintiff sustained loss and damage to the extent of $1,000.

The case was tried in the Baltimore City Court and from a judgment in favor of the defendants, the plaintiff has appealed.

There are six bills of exceptions in the record; five of them relate to the rulings of the Court below upon the admissibility of evidence and the sixth to its ruling upon the prayers.

As the action of the Court in rejecting the plaintiff's prayer and in granting the defendant's prayer which withdrew the case from the consideration of the jury, present the important questions in the case, it will be considered at once.

The undisputed facts of the case briefly stated are these: The plaintiff had been a large shipper of fruit and produce from Baltimore City, their place of business, to Montreal, Canada, in refrigerator cars belonging to the appellee. On the 19th of July, 1904, the appellant delivered to the appellees, as common carriers, in the City of Baltimore four hundred and seventy-nine crates of tomatoes to be carried in one

of their refrigerator cars from Baltimore City to the place of destination, Montreal, Canada. The route of the car was over several systems of railroads, to-wit, from Baltimore to Sunbury, Pa., over the Northern Central Railway; from Sunbury to Wilkesbarre over the Sunbury Division of the Phil. and Erie Railroad, operated by the Pennsylvania Railroad Company; from Wilkesbarre by the Delaware and Hudson Company to Rouse's Point, New York, and by the Grand Trunk Railroad from the last-named point to Montreal, Canada, the point of destination.

The tomatoes were received by the Northern Central Railroad Company at Baltimore in good condition and were placed in a car for transportation under the terms of a bill of lading set out in the record.

The car was inspected and properly iced in Baltimore, before leaving that city, at 5.40 P. M. on July 19th, 1904. It arrived in Montreal, on the 22nd of July, 1904, in a "heated condition, the ice tanks empty and the tomatoes dead ripe." The sum realized from the sale of the tomatoes amounted to $37.59, whereas, if they had not been injured and damaged, the plaintiff would have received from $800 to $900.

According to the terms of the contract between the plaintiff and defendant, stated in the bill of lading, the car was to be re-iced at two points, viz. at Wilkesbarre, Pa., on the line of appellees, a distance of about 213 miles from Baltimore, and at Oneonta, New York, on the line of the Delaware and Hudson Railroad a connecting carrier, 167 miles from Wilkesbarre. The distance from Oneonta to Montreal being about 215 miles, making the entire route of the car 600 miles.

It further appears that one of the defendant's lines ended at Sunbury, Pa., and the other at Wilkesbarre, Pa., but they had a through billing arrangement with the Delaware and Hudson Railroad. The re-icing of cars is noted on the card way bill which goes with the car and is delivered to the connecting carrier. The card shows the initials, the car number, its destination, routing, and the consignee.

It is admitted that the car was not re-iced at either Wilkes-

barre, Pa,, or Oneonta, N. Y., according to the terms of the bill of lading.   The car inspector for the Pennsylvania Railroad Company testified, that he inspected the car at Wilkesbarre, and made the entry in his record, "no ice required," that he lifted the lids on top of the refrigerator car, and saw that the ice was about four inches from the top, that it was the rule of the company, that if they could not get 600 pounds of ice in the ice tank, they considered the car full and they do not put any more ice in it; that he did not re-ice the car, that he lifted the lid of the ice-tank and found the ice within four inches from the top and concluded that no ice was required.

The witness Burroughs, assistant yard master of the Delaware and Hudson Railroad, testified, that he inspected the car at Oneonta, N. Y., on July 20th, 1904, and found the ice had melted *about a foot* from the top and he did not deem it necessary to re-ice it.

There was evidence to show that the refrigerator car was delivered by the Pennsylvania Railroad Company at Wilkesbarre and was received by the Delaware and Hudson Railroad Company in good order.   The car was inspected but not its contents.

There was evidence also to the effect that the temperature in Baltimore, July 19th, 1904, was highest 97 degrees, lowest 77 degress ; at Wilkesbarre, on July 20th, highest 83 degrees, lowest 68 degrees ; at Oneonta on July 21st, highest 84 degrees, lowest 55 degrees ; at Montreal, July 22nd, highest 72 degrees, lowest 56 degrees.

The foregoing statement is condensed from the evidence, as presented in the record and it will be seen upon this state of facts, the Court below granted the defendants prayer which withdrew the case from the jury.   The prayer is as follows :
"The defendants pray the Court, to instruct the jury that since by the uncontradicted evidence in this case, it is shown, that the defendants performed every duty they and each of them owed to the plaintiff in the transportation of the tomatoes mentioned in the evidence, while on their respective lines, and duly delivered the said tomatoes and the car

containing them to the next succeeding carrier at the end of their lines respectively, to wit at Sunbury, Pennsylvania, and Wilkesbarre, Pennsylvania, that the verdict of the jury must be for the defendants."

This prayer is open to several objections and under the facts of the case should have been rejected. It wholly usurped the functions of the jury and told them that by the uncontradicted evidence the defendants had performed every duty they and each of them owed to the plaintiff in the transportation of the tomatoes and had duly delivered them and the car containing them to the connecting carrier. It also assumed the truth of the evidence offered on the part of the appellee and excluded from the consideration of the jury the whole evidence produced by the plaintiff. In the case of *Calvert Bank* v. *Katz*, 102 Md. 61, it is said, it is manifest error for the Court to assume the existence of facts, and take away from the jury the finding of the same.

The prayer granted at the instance of the appellee in this case has been condemned by a number of decisions of this Court. *Corbett* v. *Wolford*, 84 Md. 426 ; *Boyd* v. *McCann*, 10 Md. 118 ; *Jones* v. *Jones*, 45 Md. 154 ; *Bank* v. *B. & O. R. R. Co.*, 99 Md. 661.

It will be seen that the instruction absolutely ignored the plaintiff's theory of the case, and the contract to re-ice the car at the points designated.

According to the undisputed evidence, the appellees had neglected to re-ice the car at Wilkesbarre, Pa., or at Oneonta, N. Y., according to the express terms of the bill of lading, and had therefore failed to perform their part of the contract. The rule relied upon by the appellees, to relieve them from the performance of their duty, "that the company did not re-ice unless they could get 600 pounds of ice in the ice tanks," can have no application to this case, because this rule was not embraced in the contract between the appellant, and appellees, and there is no evidence that the plaintiff had knowledge of the existence of such rule. *R. R. Co.* v. *Miller*, 16 Neb. 661. The case of *Western Md. R. R. Co.* v. *Landis*, 95

Md. 749, relied upon by the appellees is entirely unlike this. In Landis case the evidence showed that the cattle were not injured at the time the cars were delivered by the Western Maryland Railroad Company to the Cumberland Valley Railroad, the connecting carrier. In this case, there is no evidence that the tomatoes the contents of the car were inspected at Wilkesbarre. The witness testified, that the car was in good order when delivered, but its contents were not inspected. In *Meredith* v. *Railroad Co.*, 137 N. C. 479, it is held, on proof that a carrier received goods in good condition, the burden of proof rests upon such carrier to show delivery in the same condition to the next carrier or to the consignee, such proof being within its power. *Myrick* v. *R. R. Co.*, 107 U. S. 107; *U. S.* v. *Denver R. R. Co.*, 191 U. S. 84; *Hoffman* v. *Cumberland R. R. Co.*, 85 Md. 391.

There was no error in the rejection of the plaintiff's prayer. It did not correctly recite the facts necessary to be found by the jury, under the evidence in the case, and was properly refused.

Nor was there error, in the ruling of the Court, in refusing to admit the testimony sought to be introduced in the first exception. The evidence was not material or relevant to the issue in the case. We do not understand that this exception is pressed, in this Court. It is not relied upon in the appellant's brief. The second exception is not properly before the Court and need not be considered here.

The questions raised by the third, fourth and fifth exceptions may be considered together and can be disposed of without discussing them *seriatim*. The ground of the objection to the questions embraced in these exceptions is, that the questions were leading, and the witnesses were not shown to have had the requisite knowledge of facts, upon which to base an opinion.

We concur in the action of the Court, as set out in these exceptions, and can see no error in the rulings thereon.

The questions were manifestly leading, and no proper foundation had been laid, for the introduction in evidence, of the

opinions of the witnesses, sought by the questions to be elicited from them.

For the error in granting the defendant's prayer, the judgment must be reversed and a new trial awarded.

> *Judgment reversed and a new trial awarded with costs to the appellant.*