RALPH H. ALEXANDER, Acting Insurance Commissioner of Pennsylvania v. LEAMON G. TINGLE

[No. 39, January Term, 1943.]

*Decided March 16, 1943.*

The cause was argued before SLOAN, DELAPLAINE, COLLINS, MARBURY, GRASON, and MELVIN, JJ.

*Wesley E. Thawley,* with whom was *Ralph P. Dunn* on on the brief, for the appellant.

*Ernest C .Clark,* with whom were *Bailey & Clark* on the brief, for the appellee.

ADAMS, J., delivered the opinion of the Court.

This is an action at law brought by the appellant (plaintiff below) as statutory liquidator of the Keystone Indemnity Exchange, which was a reciprocal insurance exchange of the State of Pennsylvania engaged in the business of writing automobile damage and liability insurance. The defendant, a resident of Wicomico County, Maryland, was alleged to have issued to him by said Exchange during the period between April 9, 1929, and May 18, 1933, nine policies of insurance, the annual deposit premiums whereof aggregate $410.30.

On May 18, 1933, the Court of Common Pleas of Dauphin County, Pennsylvania, ordered the liquidation of Keystone Indemnity Exchange and on September 12,

466

1938, decreed that the subscribers to the exchange to whom policies had been issued between April 9, 1929, and May 18, 1933, should pay an assessment equal to one annual deposit premium on each such policy issued to them. To enforce this decree against defendant, Leamon G. Tingle, this suit was brought.

The declaration contained nine counts, each count being based on a policy alleged to have been issued to the defendant during the period between April 9, 1929, and May 18, 1933. Defendant filed general issue pleas "never promised as alleged" and "never was indebted as alleged" and plaintiff joined issue thereon.

A jury trial was had and plaintiff offered evidence tending to prove the issuance to the defendant of the nine policies referred to in the declaration and the amount of annual deposit premium on each of the nine policies. Proof was by the production of underwriting records of the Exchange as to each of the nine policies in question. Defendant did not deny that the nine policies were issued to him, his testimony being that he did not remember about the particular policies, that he could not remember the details, that he had some policies, but when he got a new policy he destroyed the old one.

At the close of the testimony plaintiff offered a prayer for an instructed verdict in his favor, in the following form:

### "Plaintiff's 1st Prayer.

"The Plaintiff prays the Court to instruct the jury that the plaintiff has met the burden of proof in this case and has proven his case by a preponderance of evidence, and the jury are further instructed that the defendant was offered no evidence sufficient in law to entitle the defendant to a verdict and that the verdict of the jury must, therefore, be for the plaintiff. (Rejected.)"

This prayer was rejected by the court and the plaintiff excepted to the ruling of the court, and the primary and controlling issue of this appeal is whether there was error in this ruling of the court.

The jury returned a verdict in favor of the defendant, and plaintiff thereupon filed a motion for judgment N. O. V. in favor of the plaintiff, which motion was overruled by the court, to which action of the court plaintiff noted an exception.

Trial Rule No. 4 of the General Rules of Practice and Procedure, which became effective September 1, 1941, is in part as follows:

### "Rule 4. Directed Verdict.

"In any proceeding tried by jury any party may move, at the close of the evidence offered by an opponent or at the close of all the evidence, for a directed verdict in his favor on any or all of the issues. * * *"

Prior to the adoption of the said General Rules it was well settled in Maryland that the person having the burden of proof was not entitled to have the court grant an instruction that the burden had been met and the facts in issue established. The court had not the authority to direct the jury that the evidence established a certain fact even though the evidence was uncontradicted and highly persuasive. The court could not thus usurp the function of the jury to weigh the credibility of the evidence. While the language of Rule 4 is sufficiently broad to warrant the grammatical construction thereof urged by the appellant, it must be read in the light of the well-established practice theretofore prevailing. So read, every provision thereof could be given full effect under proper circumstances. An instructed verdict for the plaintiff on the whole case was not unknown in our practice. See—

*Dickson v. Tweeddale and Fowler,* 114 Md. 344, 79 A. 519; (Suit on promissory note; execution and delivery of note admitted; but affirmative defenses relied on, as to which defenses there was failure of proof).

*Pearre v. Grossnickle,* 139 Md. 274, 115 A. 49; (Issues from Orphans' Court as to one of which defendant carried burden of proof which she failed to meet, hence court properly instructed jury to find for plaintiff).

*Frey & Son, Inc. v. Magness,* 161 Md. 375, 157 A. 400; (Suit on written contract which was admitted by the defendant; no legally sufficient evidence offered to establish affirmative defenses, hence proper to instruct verdict for plaintiff on whole case).

There are numerous authorities to the effect that "where the burden is upon one to prove a fact, it is not for the court to say whether that burden has been met, and to withdraw a case from the jury, at the instance. of him upon whom the burden rests." *Travelers Ins. Co. v. Connolly,* 145 Md. 545, 565, 125 A. 900, 905; *Spence v. Bethlehem Steel Co.,* 173 Md. 539, 197 A. 302; *Calvert Bank v. Katz & Co.,* 102 Md. 56, 61 A. 411; *McCosker & Malloy v. Banks,* 84 Md. 292, 35 A. 935.

Also, where evidence is practically uncontradicted the court still could not withdraw the case from the jury. There is a well recognized distinction between facts uncontested or admitted and evidence that is uncontradicted. *Pennsylvania Railroad Co. v. Stallings,* 165 Md. 615, 170 A. 163; *Smith v. Whitman,* 159 Md. 478, 150 A. 856; *Lemp Brewing Co. v. Mantz,* 120 Md. 176, 87 A. 814; *Boyd v. McCann,* 10 Md. 118; *Charleston Ins. Co. v. Corner,* 2 Gill 410.

Published with the aforesaid General Rules, which became effective September 1, 1941, are "Explanatory Notes" which were prepared by the framers of the rules and while the "Foreword" says that "These Explanatory Notes are not in any sense, of course, an official construction or interpretation of the rules. They are merely intended to inform the Bench and Bar of the purposes, scope and functions of the various rules and to aid in a better understanding of them," the Explanatory Notes are nevertheless entitled to careful consideration when the question of correct interpretation of one of the rules is before the court. Referring to Trial Rule 4, the Explanatory Notes says:

"Rule 4 codifies the existing practice as to directed verdicts with two minor additions. One requires that

the grounds for the motion for directed verdict be stated for the information of the court and counsel; the second permits the court to reserve its ruling on the motion until after the verdict or disagreement of the jury."

The following statement quoted from Ashman's "Directed Verdicts and Instructions," 2d Ed., Title 9, Sec. 96, clearly states the practice that was established in Maryland at the time that the aforesaid General Rules became effective:

"96. Power of Trial Court and Court of Appeals to Direct Verdicts in Favor of Plaintiffs and Others Bearing the Burden of Proof.

"It has been ruled in the Maryland courts, seemingly from their foundation, that where the burden is upon one to prove an issue of fact, it is not for the court to say whether that burden has been met, and to withdraw a case from the jury at the instance of him upon whom the burden rests.

\* \* \* \* \*

" 'Uncontroverted' Rather Than 'Uncontradicted' Facts.

"It is when facts are virtually uncontested or uncontroverted, rather than when the testimony in regard thereto is virtually uncontradicted, that the court can determine, as a question of law, whether they do or do not sustain the claim or defense, as the case may be, which the demurrer prayer under consideration sought, in effect, to take from the jury.

"When Directed Verdict in Favor of Plaintiff Is Permissible.

"In other words, where the facts of a case have been ascertained and agreed upon by the parties, or are virtually undisputed or uncontroverted, and there is no dispute as to the inferences to be drawn from the facts, the question becomes one of law and may be decided as such by the court. So it is well settled that the court may instruct in favor of a plaintiff, as well as in favor

of a defendant, as to the legal insufficiency of the evidence to support an issue to which it is directed."

It is fair to assume that if the drafters of Rule 4 had intended such a radical departure from pre-existing practice in this State with respect to directed verdicts, language would have been used expressly authorizing the court to determine when a party had met the burden of proof upon him, so that the court could declare the facts in issue established.

The language of the rule "any party may move, at the close of the evidence offered by an opponent" clearly suggests a demurrer to the evidence offered by an opponent who carried the burden of proof, and as the defendant might be relying on an affirmative defense as to which he had the burden of proof, "either party" at the close of opponent's evidence might have occasion to make such a motion. Then, too, the language "any party may move, * * * for a directed verdict in his favor *on any* or all of the issues" (italics added) suggests that the framers of the rule recognized that in some cases one party may carry the burden of proof as to all of the issues and in other cases defendant may have the burden of proof as to some of the issues and the plaintiff as to the other issues. In order to make the rule sufficiently broad to meet the latter contingency the language used was adopted.

Our conclusion, therefore, is that the correct interpretation of Rule 4 is that any party may properly move for a directed verdict in his favor on any issue as to which his opponent has the burden of proof, but not for an instructed verdict on any issue as to which the moving party has the burden of proof, unless the facts are uncontroverted, or the parties have agreed as to the facts.

As the plaintiff in the instant case had the burden of proving all of the issues raised by the pleadings, and as the defendant had filed general issue pleas and, although not expressly denying, did not admit the truth of plaintiff's testimony, it could not be said that the facts were

uncontroverted, therefore, the trial court correctly ruled when plaintiff's first prayer was rejected.

As to the second question raised by this appeal; namely, whether the trial court should have granted plaintiff's motion for judgment N. O. V. our conclusion is that the court could not with propriety have granted this motion unless the court had the power to direct a verdict in favor of the party carrying the burden of proof, and as we have decided that the court did not have this power, there was no error in overruling the plaintiff's motion for judgment N. O. V.

It is undoubtedly true that in this case the preponderance of evidence was in favor of the plaintiff and plaintiff's testimony was practically uncontradicted. If motion of a new trial had been seasonably filed, it would appear that such motion should have been granted on the ground that the jury's verdict was against the evidence and against the weight of the evidence. Also, this is the type of case in which it would probably be desirable to frame special issues for submission to the jury in accordance with the practice established by Rule 7, "Special Verdicts," Part Three, III, of the General Rules of Practice and Procedure, 1941, for juries would be less likely in cases such as this to decide specific issues contrary to the weight of the evidence, than they would be in deciding such a general issue as whether to find for plaintiff or for defendant.

Our conclusion is that the judgment of the trial court should be affirmed.

*Judgment affirmed, with costs.*