ROBERT TURNER, use of A. ROBINSON WHITE *vs.*
JOHN H. LYTLE.

*Claim of property seized under Attachment—Construction of
Act of 1876, ch. 285—Right of Claimant to Damages under
the issue of Property vel non—Appraisement—Effect of Bond
being in a less amount than required by the law.*

The Act of 1876, ch. 285, prescribes the mode in which the claimant
of personal property, goods or chattels taken under attachment or
execution, may, by filing a petition and giving bond, procure a dis-
charge of the property. HELD:

1st. That upon the trial of the issue joined upon such claim of prop-
erty, the question of damages, as well as the right of property, is
to be settled.

2nd. That to entitle the claimant to recover damages it is not neces-
sary that his petition should in terms claim them.

3rd. That the requirement by said Act, of a bond to be given by the
claimant, in " double the appraised value of the property attached
or seized," necessitates an appraisement, whenever a claim of prop-
erty shall be set up.

4th. That taking the bond in less than the amount prescribed, neither
works a total defeat of the claimant's right to recover, nor prevents
an inquiry of damages.

Whether the claimant is compelled, if he knows of the levy and
seizure, to resort to this method of asserting his rights, in order to
secure the property, and recover damages.—*Quære?*

APPEAL from the Circuit Court for Harford County.

The appellant in this case held a judgment against John
M. Hopkins, upon which he caused an attachment to be
issued, by virtue of which certain goods, in the hands of
a third party, were seized by the sheriff. The appellee
filed a petition under oath stating that he was the owner
of the goods, and claimed the same as his property.   A

bond was given by him, which was approved by the Court, and the property seized was discharged from the attachment. As prayed in the petition, a suit was docketed, and summons was issued, as required by the Act of 1876, ch. 285, for the plaintiff and defendant in the judgment, both of whom were returned summoned. The plaintiff appeared and filed a plea denying the claimant's right to the property attached. Upon this plea issue was joined and tried.

*First Exception.*—At the trial, the claimant, after offering evidence to prove that he was the owner by purchase, prior to the date of the writ of attachment, of the property claimed in this suit, and that said property was seized under the writ of attachment issued therein, on the 17th day of February, in the year 1882, and was discharged therefrom on the 24th day of the same month, by order of the Court, passed upon the claimant's filing his claim to the property and giving bond, offered evidence to prove that he was damaged by reason of the aforesaid seizure and attachment, and the extent of said damage. The defendant, Robert Turner, use of A. Robinson White, objected to the introduction of such evidence as irrelevant to the issue joined in said cause, but the Court, (GRASON and WATTERS, J.) overruled the objection, and permitted the evidence to go to the jury. The defendant excepted.

*Second Exception.*—In addition to the evidence mentioned in the defendant's first bill of exceptions, the claimant proved, that the property claimed, was discharged from the attachment laid upon February 17th, 1882, by an order of Court, passed on the 24th day of February, 1882, upon the claimant's filing a bond, with approved security, in the penalty of three thousand dollars, and that the said property attached, was appraised at two thousand dollars. Whereupon, the defendant prayed the Court to instruct the jury as follows:

1. That the claimant has not filed such bond in this case as is required by law, and is not entitled to recover in this action.

2. That the claimant is not entitled to recover damages in this case for any wrong and injury done him, by reason of the seizure and detention of the canned corn, mentioned in the return to the writ of attachment.

3. That the claimant has not filed such bond, as is required by law, and is not entitled to recover damages in this case for any wrong and injury done him, by reason of the seizure and detention of the canned corn, mentioned in the return to the writ of attachment.

The Court rejected these prayers, and the defendant excepted.

The jury rendered a verdict for the claimant for the property attached, and for one hundred dollars damages, and judgment was entered accordingly. The defendant, being the plaintiff in the attachment, appealed.

The cause was submitted to MILLER, STONE, ALVEY, ROBINSON, IRVING, and RITCHIE, J.

*A. R. White, Wm. Young,* and *S. A. Williams,* for the appellant.

*Herman Stump,* and *Henry W. Archer,* for the appellee.

IRVING, J., delivered the opinion of the Court.

The decision of this case depends upon the construction and effect, of the Act of 1876, chapter 285. By that Act three additional sections are added to Article ten of the Code, title "Attachments," under the sub-title "Claimants of property." The first section of that Act provides, that "In all attachments, and writs of execution whenever the same shall be levied upon any personal property, goods or chattels, which are claimed by a person or persons, or cor-

poration, other than the defendant or defendants in said attachment or writ of execution, such person or persons or corporation may file a petition with the Court issuing such attachment or writ of execution, or with the Court before whom such attachment or writ of execution is returnable, if it be returnable before a Court other than the Court issuing the same, which petition shall clearly set forth the claim and right to the property so levied upon, and be verified ·by the oath or affirmation of the petitioner, or some person in his behalf; and it shall be the duty of the clerk to docket a suit against both the plaintiff and defendant in such attachment or writ of execution, and issue a summons directed to said plaintiff and defendant giving notice of such claim, which summons shall be returnable to the same term with the attachment or writ of execution."

The next section provides, that upon the giving of bond by the claimant in double, the "appraised value" of the property seized or levied on, with security approved by the Court, or Judge, or the clerk in a certain contingency, the property seized shall be "discharged from the levy;" and the section closes with this proviso: "if the plaintiff fails to recover judgment of condemnation for the property so levied upon, the petitioner shall be awarded· his costs and shall recover damage for the wrong and injury done him by reason of the illegal seizure and detention of his property."

The third and last section provides for an additional bond if the plaintiff is not satisfied with the sufficiency of the securities,·and can satisfy the Court of such insuffi-ciency.

In this case, the claimant, John H. Lytle, appellee, filed his petition alleging the seizure of certain canned corn as the property of the defendant in the judgment, upon which the attachment was issued, which the petitioner claimed as his property. A case was docketed, and summons was

issued as required by the statute for both plaintiff and defendant in the judgment. A bond was given which was approved by the Judge and the property seized was discharged from the attachment. The case went to trial and two bills of exception were taken. The first was to the admission of evidence of damage sustained, and the second to the refusal of the prayers of the defendant in the claimant's case.

The appellant contends, that the 'case made by the claimant was property *vel non*, and raised no question of damages ; that no damages were claimed in the petition, and there being no issue in that regard, no evidence can be admitted and recovery had for damages. We think the Circuit Court committed no error in admitting the proof and permitting a recovery notwithstanding the petition made no distinct claim of damages. All our attachment laws have grown out of the "foreign attachment" proceeding by the custom of London, which is of great antiquity, and forms a part of the common law ; our statutes being but regulations as to the enforcement of rights existing independently of statute. *Drake on Attachment, sec.* 1; *Campbell vs. Morris,* 3 *H. & McH.,* 535. Prior to our statute the claimant of property attached could intervene and set up his claim and get it passed upon in the attachment proceeding. This is fully recognized in *Ranahan vs. O'Neale,* 6 *G. & J.,* 298, and has always been the practice. In such proceeding, however, he was not permitted to recover damages for the seizure, but was remitted to his special action for that purpose. After the settlement of the question in favor of the claimant's right of property, he was adjudged to have his action against the sheriff for the wrongful seizure. *Trieber vs. Blocher,* 10 *Md.,* 22. This case, and the case of *Richardson vs. Hall, et al.,* 21 *Md.,* 399, also determined that the claimant was not compelled to wait, and intervene in the attachment proceeding, though he had his option to do so, if he chose ; but might proceed

at once against the attaching creditor for his full damages, on the principle that the action accrued immediately on the wrong being done.    This Act was manifestly passed to give a claimant a more summary remedy without circuity of action and a multiplicity of suits.    It was not, in our opinion, the object of the law to take away the claimant's right to sue, at once, for the injury done by the seizure of his property, as was decided in *Richardson vs. Hall,* already alluded to, he might do.    It intended to save him from that course, if he chose to avail himself of the provisions of this statute, and to enable him thereby to get all questions affecting his right to the property settled in one proceeding against both plaintiff and defendant in the attachment.    It extends the right to make such claim in this way, to cases of seizure under executions other than attachments, but this could not have been the main object, else the statute would have taken probably a different form and would not have been enacted as an amendment to the attachment article.

The second section provides a method of getting the property levied on discharged from the levy; but it must be noticed, it does not secure its delivery to the claimant unless it was taken from his immediate possession, in which case the effect of the order of discharge would be to restore the possession to him.    The main object of the statute was to establish a form of proceeding which would give full redress in one proceeding for the wrongful taking by attachment or by execution of another's property.    The language of the statute very clearly, we think, indicates, that both the right to the property, and damages for its seizure and detention, was to be settled in this summary proceeding, if it was resorted to.    We do not mean to decide, that the claimant is compelled, if he knows of the levy and seizure, to resort to this method of asserting his rights, to secure the property and recover damages.    It is not necessary for us to decide that question; it is not before us.

But what we do decide, is, that if resort be had to this method, both the right of property and the damages are then and there to be settled. That all questions as to property may be definitely decided, both the plaintiff in the judgment, and the defendant in the judgment, are to be notified of the claim and summoned, that the claimant's right may be contested by either ; and it is expressly stated in the latter clause of the second section that the claimant, if he succeeds, shall not only have his costs, but damages he has suffered. The language is "the petitioner shall be awarded his costs and shall recover damage for the wrong and injury done him, &c." There is not the slightest indication that the costs and damages are not to be awarded at one and the same time. There is not even a comma making a break in the sense of the sentence, declaring the right. The fact that the petition, in terms, does not claim damages, makes no difference. Regarded as a question of pleading merely, the petition is sufficient by complying with the requirement of the statute, which substitutes the statement of the petitioner's right, as here presented, for the more formal pleading of another form of action. Substantial conformity to the requirement of the special proceeding created, is all that can be required. The law itself affects the parties, plaintiff and defendant in the attachment, with notice of what may be tried, and takes the place of the more formal notice ordinarily found in the pleadings. It follows that the evidence was admissible, unless the failure to give the bond in the precise penalty required in the second section, debars the claimant from the inquiry into damages, as the Court was asked to instruct the jury by the second and third prayers contained in the second bill of exceptions. We do not think the infirmity in the bond does work the consequences contemplated by those prayers.

The bond, provided for in the second section of the Act, is required to be in "double the appraised value" of the

property attached or seized. This requirement necessitates
an appraisement which in attachment cases neither the
law nor practice has hitherto required. In levies under
*fi. fa.* the old practice of appraisement, in some parts of the
State gone into disuse, is of necessity, wherever needed,
revived; and in attachment cases, it will be necessary at any.
rate, to have an appraisement whenever a claim shall be set
up, for otherwise, the penalty of the bond cannot be fixed
in conformity with the demands of the statute. In this case
there was an appraisement at some stage, for the bill of ex-
ceptions certifies that the property was appraised at two
thousand dollars; but it could hardly have been had
before the bond was given, else the Court would have
required it to be in the penalty of four thousand dollars,
instead of three thousand, as it.is. Conceding, however,
the infirmity in the bond to have been such as to warrant
the rescission of the order discharging the property, upon
proper application, or to have warranted any other method
open to the plaintiff in the attachment, for the correction
of the mistake, we do not think it worked either total de-
feat of the claimant's rights to recover, as asked by the
first prayer, or to prevent the inquiry of damages as con-
tended for in the second and third prayers. The bond
provided for in the second section of the Act, is for the
protection of the plaintiff to the execution, and we do not
think is intended as a condition precedent to the inquiry
into damages. If the property is discharged from the levy
upon the execution, and approval by the Judge of the
bond, the plaintiff has his security to the extent of the
appraised value of the property. If no such bond is
given, the property still remains under seizure, and if it
be perishable, and the case be one of seizure under an at-
tachment, and not under a *fieri facias,* the plaintiff can
get an order for its sale, and the money deposited in Court,
under the 27th section of Article ten. If the discharge of
the property is obtained by the giving of bond without

sufficient securities, the third section of the law gives the plaintiff in the attachment a summary remedy, upon application to the Court. The provisions of this third section indicate clearly that it was the plaintiff's protection the law makers were contemplating in providing for a bond to take the place of property discharged, and which might perish or be put beyond reach.

The claimant has no security for the damages he may recover, but the judgment, the value of which depends entirely on the pecuniary responsibility of the plaintiff in the attachment. If he establishes his right to the property, his liability on the bond is discharged, and there is no damage resulting to the plaintiff by reason of his recovery of property and damages, even if the bond was invalid or insufficiently secured. The putting of this clause in the second section instead of the first, has given rise to the contention. If it were in the first section, we suppose there would have been no doubt excited about it. The law is in several particulars ambiguous, and altogether bunglingly drawn, and in some respects difficult, if not impossible, of literal execution ; but to the extent that it can be executed, with reasonable certainty as to the intention of its makers, it is our duty to enforce it. The reasoning adopted, we think, shows the bond has no connection with the claimant's right either to have his title to the property settled, or his damages assessed ; but was solely for the protection of the plaintiff, if the property was taken out of the hands of the officer by an order of Court discharging it from the levy. It was the security of the plaintiff, for the payment of his judgment of damages, (which the law restricts to the appraised value of the property seized and discharged,) if the claimant failed to establish his title. The property being discharged he gets judgment to the extent of his claim, if that does not exceed such appraised value ; and, if it does not reach the appraised value of the property discharged, then for the

amount of his claim. This section calls his judgment a judgment of condemnation; but inasmuch as the property seized has been discharged, it can only be enforced as a judgment of damages, for the payment of which, the bond is his warranty. It cannot be questioned that the law is derogatory of the common law and must be strictly construed; and that being a special proceeding must be strictly pursued; and for the purpose of accomplishing its intent, we think ours is a strict construction. In practice there can be no difficulty such as is suggested about the judgment for damages because of the joinder of the defendant in the attachment, as a defendant in respect to the claimant's petition, and the case made on it. If the claimant succeeds so far as the defendant's right to the property is concerned, a fair construction of the law would hold him concluded; but in respect to the damages, they would be awarded against the plaintiff in the attachment alone, who had committed the wrong of having it seized. There is no more difficulty than in the case of two trespassers being jointly sued and the proof only establishing the guilt of one. The verdict and judgment are entered in accordance with the facts and the finding.

It follows, from what we have said, that there was no error in the admission of evidence, or the rejection of the prayers, and the judgment will be affirmed.

*Judgment affirmed.*