HARRISON HOPPER *vs.* JOHN H. CALLAHAN.

*Sale—Instruction—Separate deed of Married woman.*

Where the purchaser of a farm and certain personal property thereon, from a man and his wife, employed the husband to attend to the farm for him, the fact that the personal property was in the possession of the wife with the owner's concurrence, would not authorize a reasonable inference that she had a right to sell it; and a person purchasing such property from her, without the necessary evidence of her right to sell it, would have to take the consequences of his own improvidence.

An instruction that the plaintiff in replevin could recover on a temporary right of possession, although the title to the property was in another person, should be refused for failing to inform the jury what facts in evidence would establish a temporary right of possession against the owner.

A bill of sale of property belonging to a married woman executed without joining her husband, is void under section 2 of Article 45 of the Code.

APPEAL from the Circuit Court for Baltimore County.

The case is stated in the opinion of the Court.

*First, Second,* and *Third Exceptions* are set out in the opinion of the Court.

34                    v. 78

*Fourth Exception.*—The plaintiff offered, among others, the following prayers:

1. That under the pleadings and evidence in this case, the verdict of the jury as to the fifty-four head of sheep and thirty-eight head of lambs, must be for the plaintiff.

4. If the jury find that Margaret Callahan, from the year 1884 to 1889, was in possession and control of the personal property on the Aberdeen farm, by and through the concurrence of the defendant; and that in the year 1889, the plaintiff, for valuable consideration and without notice of any claim by defendant, acquired possession to same; and if they find that the possession and control by plaintiff over said personal property continued up to the time the distraint was laid, referred to in the evidence, then the jury may find their verdict for the plaintiff for the said goods mentioned.

6. The plaintiff in replevin, in order to entitle him to recover, need only show that the right of possession of the property was in him at the time of the issuing of the writ, even though said right of possession is only temporary, and the title to the property is in another.

The defendant prayed the Court to instruct the jury as follows:

That if the jury shall find from the evidence that the articles of personal property named in the writ of replevin and the declaration, except the sheep and lambs, were sold and delivered to the defendant by Timothy Callahan and his wife, Margaret Callahan, in the year 1884, and that the defendant took possession of the same and kept possession and control of the same until 1889, and that he then gave to the plaintiff, John Callahan, the possession of the same, under an agreement that he, Callahan, should take possession of said personal property and the farm where they then were, upon paying to

Hopper *vs.* Callahan.

the defendant annually the interest on the sum of $7,500, or any lesser sum, the taxes and other expenses of said farm; and shall further find that said John Callahan took possession of said property under such agreement, but failed to pay the defendant any such interest, to pay the taxes on said property, then the verdict of the jury must be for the defendant for such of the articles of property replevied in this case, as they may so believe were so bought by and delivered to the defendant, and were by him so above delivered into the possession of the plaintiff, *although the jury may believe from the evidence that the possession of said property was obtained by the plaintiff from his mother and father in* 1889, *as testified to by him.*

The Court (BURKE, J.,) granted the first, fourth and sixth prayers of the plaintiff, and refused to grant the prayer of the defendant as offered, but granted it after striking therefrom the words in italics. The defendant excepted to the granting of the plaintiff's fourth and six prayers, and to the refusal to grant his own prayer without modification. The verdict and judgment were for the plaintiff, and the defendant appealed.

The cause was argued before ROBINSON, C. J., BRYAN, FOWLER, PAGE, McSHERRY, and BOYD, J.

*Osborne I. Yellott,* (with whom was *John I. Yellott,* on the brief,) for the appellant.

*Thomas Foley Hisky,* and *D. G. McIntosh,* (with whom were *Wm. H. Harlan,* and *J. Edwin Webster,* on the brief,) for the appellee.

BRYAN, J., delivered the opinion of the Court.

Callahan brought an action of replevin against Hopper for the recovery of certain goods and chattels.

There was a count in the *detinuit* and one in the *detinet*. The case was tried on issues under the first named count. The articles about which there was a contest were such as are necessary or useful for the successful management of a farm. There had been a distraint for rent; the plaintiff replevied; and there was an avowry by defendant which was afterwards withdrawn. The pleas were *non cepit*, and property in the defendant; there was another plea which seems to have been withdrawn. The verdict and judgment being for the plaintiff, the defendant appealed.

There was no controversy about the title of the plaintiff to a number of sheep and lambs which were included in the property replevied. The evidence in his behalf tended to prove that the other goods and chattels replevied were on a farm in Harford County; that they belonged to his mother, and were sold by her to him, and that the possession was delivered to him by her and her husband. The evidence for the defendant tended to prove that in the year eighteen hundred and eighty-four, several years before the alleged sale to the plaintiff, he bought the farm, and the personal property on it (being the goods and chattels now in controversy) from Timothy Callahan and Margaret his wife, (the father and mother of plaintiff,) and that they delivered to him the possession of the real and personal property; and that after this purchase, Timothy Callahan attended to the business of the farm for him; and that in the year eighteen hundred and eighty-nine, the defendant rented the farm and everything on it to the plaintiff. The defendant admitted that the deed for the farm was intended, to a great extent, as a security for money due him by Timothy Callahan. There was also evidence on behalf of the plaintiff tending to prove that from eighteen hundred and eighty-four to eighteen hundred and eighty-nine, the defendant never exercised any control over the

personal property on the farm; and that it was during that time in the possession and under the control of Timothy and Margaret Callahan. The plaintiff testified that the property, both real and personal, was held by his father and mother until eighteen hundred and eighty-nine, and was managed by his father. The defendant took three bills of exception to the rejection of testimony, and one to the ruling of the Court on prayers for the instruction of the jury. The Court granted three prayers in behalf of the plaintiff, and refused one asked in behalf of defendant. We will consider the prayers before stating the exceptions to evidence. The plaintiff's first prayer asked a verdict for the sheep and lambs before mentioned, and was not objected to. The second prayer (marked four) maintained that if Margaret Callahan from eighteen hundred and eighty four to eighteen hundred and eighty-nine, was in possession and control of the personal property above mentioned by and through the concurrence of the defendant, and that the plaintiff in the year eighteen hundred and eighty-nine, for valuable consideration and without notice of any claim by defendant acquired possession of it, and held possession and control of it until the distraint was laid, then the jury might find a verdict for the plaintiff for said goods. This prayer was granted, and the defendant excepted.

It will be observed that this prayer does not require the jury to negative the defendant's title, although evidence had been given in support of it. On the contrary, it proceeds on the theory that even if he had a good title to the personal property, the plaintiff could acquire a good possessory title by purchase for a valuable consideration from Margaret Callahan, if she was in possession and control of it by defendant's concurrence. According to the general rule of law in regard to sales of chattels "no one can transfer to another a better title than he

has himself," and a *bona fide* purchaser succeeds only to the rights of his vendor. There are some exceptions to this rule, which are as well recognized and established as the rule itself. When the owner of goods has put in possession of another person such evidence of the right of selling them as would, according to the ordinary and common course of business, establish a right of disposal, a sale to a *bona fide* purchaser without notice will divest his title. He is surely bound by his own act, when he holds out to the public a third person as one having competent authority to make sales. But it is not held that mere possession of goods will justify the inference that the possessor has the right to sell them. The inference must be a natural and obvious deduction from the circumstances of the case according to the usages of business. Where goods were delivered to a person whose common business was to sell, it was held that an authority to sell might be implied. But it is also held that no such authority would be conferred by entrusting them to a person whose business was of a different nature; for instance, where a watch is given to a watchmaker to be repaired, an authority to sell cannot justly be supposed. In *Hoare vs. Parker*, 2 *Term Reports*, 376, a widow had pawned plate, in which she only had a life interest under her husband's will, but the pawnee had no notice that her interest was limited. It was held that the lien for the money advanced on the pledge was void against the remainder-man after the widow's death. The Court said: "This point is clearly established, and the law must remain as it is, till the Legislature think fit to provide, that the *possession* of such chattels shall be a *proof* of ownership." We think that these principles are clearly declared in *Saltus vs. Everett*, 20 *Wendell*, 267, and in *Levi vs. Booth*, 58 *Md.*, 305. If Hopper bought the farm and this personal property from Timothy Callahan and his wife, and employed Timothy to attend to

the farm for him, the fact that the chattels were in the possession of Mrs. Callahan by the defendant's concurrence could not authorize a reasonable inference that she had a right to sell them. The circumstances of the possession are very far removed from those which in *Saltus vs. Everett,* and *Levi vs. Booth,* are mentioned as giving an apparent right of property, or right of disposal. When a man is in charge of a farm for the owner, it is not at all strange that his wife should have the possession and control of the personal property on it. Certainly it could not justly be said that the owner had given her the apparent authority to sell it. It is not the common business of persons who are placed in charge of farms to sell the personal property which the owners confide to their custody for the ordinary and necessary requirements of farms. Persons who purchase such property from them without the necessary evidence of their right to sell, must take the consequences of their own improvidence. We think that the Court committed an error in granting this prayer. The defendant's prayer set forth his title as alleged in the evidence offered by him, and asked a verdict on the hypothesis of its truth, notwithstanding the finding of the facts in the plaintiff's prayer just mentioned. From what we have said it will be seen that this prayer ought to have been granted without modification. But the Court modified it, by striking out the reference to the facts embodied in the plaintiff's prayer. The plaintiff's prayer marked "six" is entirely abstract; the principles stated in it were correct, but they ought to have been applied to the facts in evidence, and the jury ought to have been informed what facts were left to their finding. In the form in which it was offered, it left the jury to apply the law to the evidence according to their own unaided judgment, and it was well calculated to perplex and mislead them. When they were told that

the plaintiff could recover on a temporary right of possession, although the title to the property was in another person, they ought further to have been informed what facts in evidence would establish a temporary right of possession against the owner.

As the case must be remanded for a new trial, it is proper to decide all the exceptions. The first and second exceptions were taken to the refusal of the Court to admit in evidence a paper-writing called in the record a "bill of sale." It purported to have been executed by Mrs. Callahan without the joinder of her husband, and to have been acknowledged before a justice of the peace of the City of Baltimore; but it had not been recorded. Supposing the chattels embraced in this instrument belonged to Mrs. Callahan, she and her husband might have conveyed them by their joint deed, as provided in Article 45, section 2, of the Code; but her own separate deed is not within the statute. It was not the purpose of this section to prevent husband and wife from disposing of her chattels by a sale in the ordinary way without deed or writing (*Whitridge vs. Barry*, 42 *Md.*, 151); but in cases where a deed is made, as it authorizes only a joint deed, the wife's separate deed stands as it did before the statute was made; that is to say, it is void. There was a subscribing witness to the instrument who was dead at the time of the trial, and his hand-writing was proved; this proof would have been sufficient to entitle the writing to be read in evidence, if the contract had been such as the married woman was competent to make. She and her husband could jointly sell her chattels without writing; and if they had, both acting together, sold them at the time this paper-writing was executed, the sale would, of course, have been valid; but the paper-writing would neither have added to, nor detracted from, the efficacy of the sale. In the third exception, the defendant offered to prove that after the sale

to him by Callahan and wife, they fully recognized and assented to his purchase and possession of the property, and that she acquiesced in all that her husband had done in delivering the possession to him; the Court ruled that the witness must "limit his answer to Mrs. Callahan's knowledge as to defendant's possession of the property, and her acts and declarations concerning the transaction;" the witness thereupon testified that "Mrs. Callahan knew that he had possession of the personal property, and assented to his possession and made no objection," and this evidence went to the jury. We are unable to see in what way the defendant was injured by this ruling.

For the errors in respect to the prayers, the judgment must be reversed, and a new trial awarded.

*Reversed, and new trial.*

(Decided 23rd January, 1894.)