HENRY A. FRENTZ, Executor of the Will of Doro-
:      thea M. Schade, Deceased,

*vs.*

HELEN M. SCHWARZE.

*Savings bank deposit*: *deposit book; gifts inter vivos; delivery
of book and order.*

A savings bank book is the voucher of the depositor, and the
only evidence he has as evidence of his debt.            p. 16

The book is the instrument by which the money can be ob-
tained, and its possession is some evidence of title in the person
presenting it to the bank.                          p. 16

The manual delivery of a savings bank deposit book to the
donee by the donor, and the signing by the donor of a declara-
tion in writing of his desire to vest the ownership of the account
in the donee are sufficient to transfer title from the donor to
the donee.                                      pp. 15, 17

Where such donee gave the bank-book and order to a third
party, whose sole authority was to have the account transferred
to such donee's name, his possession was not that of the donor,
but was that of the donee as agent, and neither the death of the
donor nor any act of the agent impairs the donee's title to the
account.                                          p. 18

*Decided December 2, 1913.*

Appeal from the Baltimore City Court (Stump, J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Alfred S. Niles* and *Oscar Wolff* (with whom was *Chester F. Morrow* on the brief), for the appellant.

*Wm. B. Smith* (with whom was *James G. Phillips* on the brief), for the appellee.

URNER, J., delivered the opinion of the Court.

The issue in this case relates to the validity of an alleged gift of a savings bank deposit. There is no dispute as to the main facts. On August 12, 1912, Dorothea M. Schade, a widow, of Baltimore City, had to her credit the sum of $2,174.68 in the Hopkins Place Savings Bank. She had then been confined to her bed for sometime with cancer of the stomach, from which she died the following day. During her illness she was attended and nursed by the appellee, Mrs. Helen M. Schwarze, who was her niece and only near relative. The care and trouble involved in this service were appreciated by Mrs. Schade and impressed her friends and visitors, one of whom suggested to her, the afternoon before her death, that she give her niece one of her bank books In a short while Mrs. Schade called her niece and told her to bring the bank book kept in a certain bureau drawer. This was done and the book was placed in Mrs. Schade's hands. After she had looked it over she handed it to her niece, who asked: "Do you want me to have this, Aunt Dora?" to which Mrs. Schade answered, "Yes." Mrs. Schwarze then put the book on the mantel piece. Later in the day at her request Mr. William Langschmidt, a near neighbor, called at the house. He was summoned for the purpose of taking such action as might be

supposed to be necessary to make the gift effective.  Upon his
arrival he found Mrs. Schade quite weak.  He thus describes
his interview: "I says, 'Well, Mrs. Schade, what do you
want me to do.'  Now, I am not positive, but it is pretty well
one and the same thing, whether she says 'Helen and bank
book', or whether she says 'Bank book to Helen', but that is
what she meant concerning the bank book.  The bank book
was on the mantel piece and she was looking right at the bank
book.  So then I drew up a kind of a paper and as near as I
can recollect it was to this effect: 'I, Doro Schade, desire to
have this bank, book transferred over to Mrs. Helen
Schwarze.' "  The paper was signed by Mrs. Schade, and Mr.
Langschmidt took the bank book off the mantel and asked her
whether Helen should have it, and she said "Yes."  He then
started out of the house with the book and the paper, but find-
ing that he was too late to transact business at the bank that
day he showed the paper to a friend who advised him that it
was not sufficient and who prepared for him a formal order
on the Savings Bank for the payment to Mr. Langschmidt, or
order, of $2,174.58 and interest in settlement of the bank
book in question which was designated by its number.  The
gentleman who wrote the order dated it as of the following
day, August 13th, for the reason, as he stated, that it could
not be presented at the bank until that time.  Mr. Lang-
schmidt then destroyed the paper already executed.  About
six o'clock on the evening of the 12th Mrs. Schade signed the
order last prepared and it was attested by Mr. Langschmidt
and by Dr. Norwood, her attending physician.  Before leav-
ing the room Mr. Langschmidt said to Mrs. Schwarze: "If I
get this money, I am not going to bring it home.  I will de-
posit it right over in your name, open an account in your
name."  To this Mrs. Schwarze assented.  The bank book
and order was taken by Mr. Langschmidt to his home that
evening, and the next morning as he was about to start to the
Savings Bank to have the account transferred, he was in-
formed that Mrs. Schade had just died.  He went to the bank
and stated the facts of the case, but was told by the president

that in view of Mrs. Schade's death the money could not be paid and the matter would have to be left to the Court. Upon his return from the bank he met the appellant, whom he knew to be the executor of Mrs. Schade's will, and delivered to him both the bank book and the order. The account was transferred to the executor upon his qualification, and, after a demand upon him for the fund had been made by Mrs. Schwarze and had been refused, she brought this action for its recovery. A judgment upon verdict was rendered in her favor, and the executor has appealed.

There is one bill of exceptions relating to the admissibility of evidence, and a second which is concerned with the instructions to the jury. The latter exception will be first considered.

The trial Court was asked to direct a verdict for the defendant on the separate theories that the delivery of the deposit account to the appellee was not complete and irrevocable so as to entitle her to claim it as a gift, and that Mrs. Schade was not shown to have been mentally capable of making the donation. In reference to the question of capacity, and assuming the burden to have been on the plaintiff to show that the donor at the time of the gift had the requisite degree of intelligence to support its validity, it is sufficient to say that the record does not justify us in declaring as a matter of law that this fact was not proven. There is testimony from which the jury could readily find that Mrs. Schade, while greatly enfeebled by the disease from which she suffered, was competent to make the disposition we have described.

The important question in the case is whether there was an effective delivery of the subject of the intended gift. The thing to be given was the donor's savings bank deposit, and the means adopted to accomplish a transfer of the title consisted of the manual delivery by the donor to the donee of the bank book, the signing by the donor of a declaration in writing of her desire to vest the ownership of the account in the donee, and the execution by the donor of an order on the bank for the payment of the fund to a designated person with

a view to having the deposit actually placed to the donee's credit on the bank's records. It would seem that every method available to the donor under the circumstances for divesting her own interest in the fund and consummating the gift was in fact employed. There was no further act which *she* could perform to make the donation more complete. In view of her condition it was impossible for her to attend personally to the transfer of the account on the books of the bank. She could do no more than deliver the book and give an order for the payment of the deposit. It was not because of any omission on her part, but because of her death before the passbook and order were presented at the bank, that its officials objected to making the transfer. If the order had been given to the donee herself and not to a third person for her use, the result would have been the same, as the refusal of the bank to honor it was not due to its form but to the fact of the previous decease of the depositor by whom it was executed. The intent of the donor to make the gift, and the donee's acceptance, being clearly shown, the specific inquiry is whether a donation of the deposit could be made by a delivery of the bank book accompanied by a written order for the payment of the money. If anything more was essential to the validity of the gift, then it is apparent that under the conditions in which these parties were placed no such gift was possible.

In *Whalen* v. *Milholland,* 89 Md. 207, this Court, speaking through JUDGE McSHERRY, said: "The great weight of authority supports the proposition that a gift of savings bank deposits by delivery of the passbook is a valid and complete gift of the money * * * A savings bank book has a peculiar character. It is not a mere passbook, or the statement of an account; it is issued to the person in whose name the deposit is made, and with whom the bank has made its contract; it is his voucher, and the only security he has, as evidence of his debt. The book is the instrument by which alone the money can be obtained, and its possession is thus some evidence of title in the person presenting it at the bank."

The case from which we have quoted is cited in the opinion in *Brewer* v. *Bowersox,* 92 Md. 571, as authority for the statement in reference to savings bank deposits, that: "A delivery of the bank book or of the certificate of deposit with an intent to pass the ownership of the fund will perfect the gift and clothe the donee with an indefeasible right to the money on deposit." While the facts of these cases were different from the present, the expressions we have quoted were pertinent to the questions there decided, and they are directly applicable to the issue raised by this record.

In *Conser* v. *Snowden,* 54 Md. 175, the party claiming as the donee of a savings bank deposit had received from the depositor an order for the payment of the money, but did not come into possession of the bank book, and the gift was held to be incomplete. The Court observed that the depositor, or any other person with an order for the payment of the money, could have drawn it from the bank on presentation of the bank book notwithstanding the existence of the order upon which the gift was sought to be maintained. The possession of the bank book was essential to the withdrawal of the fund, and as that evidence of title had not passed beyond the control of the donor in the case last cited, no delivery of the deposit could be held to have occurred. In the case now before us the bank book was delivered by the donor into the personal possession of the donee, and she has never parted with its custody except to a third person whose sole authority and duty were to have the account transferred to her name. Under such conditions it is plain that the donor retained no legal power to control the deposit. The bank book, without which the money could not be withdrawn, had by her own act been placed beyond her dominion and right to recall. Its return could not have been exacted from the donee or from the person to whom the latter had entrusted it for the purpose indicated. The theory suggested in the argument that Mr. Langschmidt should be regarded as the agent of Mrs. Schade for the transfer of the deposit and that his agency was terminated by her death is not supported by the facts. The deliv-

ery of the bank book to the donee had already been made when the order to Mr. Langschmidt was executed. He did not receive the book from Mrs. Schade, but picked it up from the mantel where Mrs. Schwarze after its delivery to her had laid it, and he took it into his possession upon the understanding with her that he was to secure the fund for her in pursuance of the gift. His possession of the book and his authority under the order were incident and subject to the interest previously vested in the donee by the delivery to her of the pass book. His agency was not for the donor but for the donee, and he could not validly have done any act to impair her title without her consent.

If Mrs. Schade had died intestate, the whole of her estate including the fund in controversy would have passed to the appellee as her only next of kin and heir at law. The aunt evidently wished to supplement, by the gift in question, the moderate provision she had made for her niece in her will. Upon the uncontroverted facts in the case and upon the principles of law relating to such dispositions, we are of the opinion that the intent of the donor to make the gift was effectually accomplished by the means she adopted for that purpose, and that there was accordingly an adequate ground for the appellee's recovery in this suit.

The granted prayers of the plaintiff are consistent with the views we have expressed. It follows also that the defendant's first prayer which sought to withdraw the case from the consideration of the jury was properly refused. His second prayer was based upon the theory that the plaintiff could not recover if the jury found that Mr. Langschmidt was authorized to act merely as the agent of Mrs. Schade in reference to the withdrawal of the deposit. For the reasons already stated we think the evidence does not admit of such an inference, and we therefore approve of the action of the trial Court in the rejection of this prayer.

The third, fourth and sixth prayers offered by the defendant were granted. By his fifth prayer the defendant asked to have the jury instructed that the burden of proof was on

the plaintiff to establish her case by evidence which was clear and free from uncertainty, and that a deathbed donation, such as the one alleged by the plaintiff, in order to be upheld ought to be above question of suspicion. The Court below properly declined to apply this abstract proposition to the case here presented. It is suggested that the plaintiff's fourth and the defendant's sixth prayers, both of which were granted, are in conflict. According to our understanding of these instructions they are not open to this objection. The fourth prayer of the plaintiff told the jury in effect that if they found the facts we have detailed, showing a complete gift of the deposit to the plaintiff, then it was not necessary to her recovery that she should have actually reduced the money to her possession during the lifetime of the donor. The defendant's sixth prayer made a verdict for the plaintiff dependent in part upon a finding that no power remained in the donor to countermand the order given for the payment of the deposit. It is clear that if an effective gift was found to have been made under the first of these prayers, the jury could not find a reserved right of revocation under the other, but the submission of the opposing theories of the respective parties did not render the instructions inconsistent.

The only remaining exception refers to the action of the trial Court in disallowing a question addressed to the plaintiff on cross-examination as to whether she had not filed a claim in the Orphans' Court for services rendered the decedent during her last illness. This fact, if proven, could not have reflected in any way upon the single issue being tried as to the validity of the gift upon which the suit was based, and the objection to the question was properly sustained. We find no error in any of the rulings presented for review.

*Judgment affirmed, with costs.*