KENNETH N. GILPIN *v.* JOHN F. SOMERVILLE.
[No. 62, April Term, 1932.]

*Decided June 22nd, 1932.*

The cause was argued before Bond, C. J., Pattison, Urner, Adkins, Offutt, Digges, Parke, and Sloan, JJ.

*Clarence E. Martin* and *Brodnax Cameron,* for the appellant.

*Arthur R. Padgett,* for the appellee.

Digges, J., delivered the opinion of the Court.

The appellant, a citizen of West Virginia, obtained a judgment against Charles L. Gerling, and on that judgment issued an attachment out of the Superior Court of Baltimore City, under which attachment two horses then at Pimlico were levied upon as the property of Gerling. The appellee, by a petition, intervened and claimed the horses so levied upon as his property. The case thus made was tried before a jury in the Superior Court, and resulted in a verdict and judgment for the claimant, the appellee. From this judgment the appellant, attaching creditor of Gerling, has appealed.

There are thirteen exceptions contained in the record; twelve to the rulings on evidence, and one to the action of the court on the prayers. As to the first twelve, having to do with rulings on evidence, without considering them in detail, it is only necessary to say that we have carefully examined the questions presented by these exceptions, and find no error in the rulings of the court thereon. The main question arises under the thirteenth exception to the court's action in granting the one prayer offered by the claimant, and refusing the plaintiff's A, B, third, fourth, fifth and sixth prayers. The court granted the plaintiff's first and second prayers.

The plaintiff's A prayer was for an instructed verdict for the plaintiff, on the theory that the claimant had offered no evidence legally sufficient to entitle him to recover. The

theory of this prayer is that the burden was upon the claimant to prove that the horses attached were his property, and that this he had failed to do. Considering that proposition, the contention is untenable, for two reasons: First, because the burden of proving title to and property in the horses was not upon the claimant, but upon the attaching creditor and, second, because the record discloses evidence which, if believed by the jury, would be amply sufficient upon which it. might find a verdict for the claimant. As to the first reason, the law of this state provides two different modes of practice under which a claimant to personal property which has been levied upon by way of attachment or execution may assert his claim. The first is under the old and well-established practice of intervening by petition in the attachment suit; and the other is by proceeding under the provisions of section 47 of article 9 of the Code. When the first method is adopted, the claimant becomes a defendant in the attachment suit, and the burden remains upon the plaintiff, the attaching creditor, to show that the property levied upon is the property of the defendant in the attachment suit.

The substantial provisions of section 47 of article 9 of the Code were first enacted by chapter 285 of the Acts of 1876, and amended in minor particulars by chapter 507 of the Acts of 1888 and chapter 507 of the Acts of 1892. In the case of *Kean v. Doerner,* 62 Md. 475, decided shortly after the passage of the act of 1876, it was contended that the right which a claimant had under the former practice was abolished, and that that act provided the exclusive means by which a claimant of property could proceed. This contention was denied, and Judge Stone, speaking for the court, said: "The second point made by the appellant is, that the only way a claimant can now come in and assert his claim, is in the mode pointed out by the Act of 1876, chap. 285, and that the claimant in this case, not having proceeded in such mode, has no standing in court. The Act of 1876, chap. 285, gave the claimant some additional rights which he had not previously been entitled to. It was an act passed for the exclusive benefit of claimants, and was intended to

enlarge and not restrict their rights. The act does not profess to be a substitute for, or to repeal, any existing law, nor is it inconsistent with any such existing law. It merely professes to add certain sections to the attachment statute law. It would be a novel rule of construction to say that an act which gave additional rights, meant to take away those already existing. The material additional rights which the Act of 1876 gave the claimant, was the right of immediate possession of the goods and chattels levied on, if he chose to give the bond required, and also the right to try the question of the right of property, and the right to damages at the same time, and in the same case. Neither of these rights were possessed by the claimant before the Act of 1876. In order to avail himself of these additional rights the claimant must proceed under the Act of 1876. But he may not wish to do so. The character of the property levied upon or attached may be such that no special injury may result to the claimant for want of immediate possession of the goods, and in such case he may prefer to wait until the return day of the writ, instead of taking the trouble to give the bond, etc. In such case the older and slower process is open to him." It is also to be noted that the act of 1876 confined its provisions to personal property; and, when real estate is levied upon, the older and slower practice was and is the proceeding which the claimant to such real estate must follow.

In 2 *Poe, Pl & Pr.* (3d Ed.), sec. 561, in speaking of claimants to property attached or levied upon under execution, after pointing out the method of asserting title by a claimant, the author says: "Upon the filing of such claim and plea, the clerk dockets the suit between the attaching creditor and the claimant, and at the trial, in order to entitle the plaintiff to a judgment of condemnation against the land or goods and chattels attached, it is incumbent upon him to prove title in the defendant. The burden of proof is not on the claimant to establish title and ownership in himself but on the plaintiff to show that the property belongs to the defendant and was liable to condemnation." Section 47 of arti-

cle 9 declares that, where the claimant files a petition under its provisions, "it shall be the duty of the clerk to docket a suit against both the plaintiff and defendant in such attachment or execution and issue a summons directed to said plaintiff and defendant, giving notice of such claim and returnable to the next succeeding rule day or term of said court."

In *Lemp Brewing Co. v. Mantz,* 120 Md. 176, 87 A. 814, 817, in which the claimant had proceeded under section 47 of article 9, the court was dealing with the validity of a prayer which asked an instruction for a directed verdict in favor of the claimant. This prayer was held bad because, when proceeding under that section, the claimant became plaintiff, and the burden was upon him to show his ownership of, or property in, the articles attached, and it was beyond the province of the court to declare, as a matter of law, that the burden had been met; citing *Calvert Bank v. Katz,* 102 Md. 56, 61 A. 411; *McCosker v. Banks,* 84 Md. 292, 35 A. 935; *Consol. Rwy. Co. v. O'Dea,* 91 Md. 506, 46 A. 1000; *Thomas on Prayers,* sec. 32-a. In the course of the opinion the court quoted the language above set forth from 2 *Poe, Pl. & Pr.* (3d Ed.), sec. 561, and then added: "But this statement evidently had reference to the practice that existed prior to Acts of 1876, ch. 285 (Code of 1912, art. 9), sec. 47, under which the claimant intervened as a defendant. The appellant's petition was filed under section 47 of article 9 of the Code. * * * Under this section the debtor and the attaching creditor are made defendants in the claimant's suit, and the claimant, in addition to asserting his claim, is permitted to recover damages for the wrongful seizure and detention of his property, and while in the cases of *Turner v. Lytle,* 59 Md. 199, and *Albert v. Freas* (103 Md. 583, 64 A. 282), *supra,* the point was not directly raised or considered, in the lower court the trial of these cases proceeded upon the theory that the burden was on the claimant to establish his claim to the property involved, and the questions presented on appeal were disposed of accordingly. With that burden on the plaintiff, the claimant in the case at bar could not, at the instance of the plaintiff, have been withdrawn from the

jury." The effect of that case was to decide that the claimant, having proceeded under section 47, was a plaintiff, with the burden of proving that the attached property was his, and was not entitled to an instruction to the jury that he had met that burden. The case clearly recognizes that the burden does or does not rest upon the claimant, dependent upon whether he proceeds under section 47 of article 9 or under the old practice.

In the case at bar, the appellee proceeded under the old practice and became a defendant in the attachment case, leaving the burden upon the attaching creditor as it rested before his intervention. That he proceeded under the old practice is clear; because, if under section 47, it became the duty of the clerk to docket a new suit wherein the claimant would be plaintiff and the attaching creditor and debtor would be defendants. Again, in this case, even if the proceedings had been under section 47 and the burden was upon the claimant, it could not be said as a matter of law that he had failed to meet that burden. If this court believed that some of the witnesses on behalf of the claimant made inconsistent statements, or were untruthful, as to which we express no opinion, such would not be the basis for a directed verdict; because, under the firmly established law of this state, it is peculiarly the function of the jury to pass upon the credibility of witnesses and the weight to be given their testimony. It is abundantly apparent from the record that the claimant produced evidence, both oral and written, sufficient upon which to base a verdict, if in the opinion of the jury the facts so presented were true. It is evident, from the verdict, that the jury so believed. There was no error in the refusal of the plaintiff's A prayer, which asked for a directed verdict for the plaintiff and against the claimant.

In view of what we have said as to the burden of proof, the plaintiff's first prayer, which was granted, presented the case to the jury, so far as the plaintiff was concerned, in a more favorable light than he was entitled to; and, taken in connection with the plaintiff's second prayer, which was also granted, fixed the law of the case as favorably to the plaintiff as he had a right to demand.

The plaintiff's B, third, fourth, fifth, and sixth prayers are requested instructions on what the appellant calls "tests of credibility," and contain various abstract statements, constituting tests to be applied by the jury in determining the credibility of witnesses; such as, "the jury are the sole judges of the credibility of the several witnesses in this case and in weighing the testimony they may take into consideration the probability or improbability of the statements made by several witnesses, their demeanor upon the witness stand, the contradictory statements they may have made at other times and places, if the jury so find, together with all of the other facts and circumstances in the case; and if the jury believe from the evidence that any one or more of the witnesses has wilfully and intentionally testified falsely to any material fact, then the jury are at liberty to disregard such evidence of such witness as a whole, except such part thereof as may be corroborated by some other evidence herein and found to be credible by the jury". "The jury are entitled to pass upon the credibility of witnesses, and if they shall not believe the testimony of any witness, then they are at liberty to disregard so much of the testimony of that witness as relates to facts as to which there is no other credible evidence"; "a witness may be impeached by evidence that he has made at other times, statements inconsistent with his present testimony." It will be seen that these are statements of tests as to credibility which the common experience of mankind, over a long and indefinite period, has found proper to apply in judging the truthfulness of statements, whether given in or out of court, under oath or not. Dozens of such tests might be enumerated which are applied every day in business relations between men, and by jurors. There is hardly a case where counsel, in argument to the jury or to the court, do not, in an endeavor to have the testimony of a witness discredited, point out some or perhaps all of the propositions contained in these rejected prayers; and in addition, juries, being composed of men of average intelligence and business capacity, apply these tests, whether called to their attention or not. We have been referred to no case where such a

prayer has been passed upon by this court. It seems to be the practice in some states for the court to grant such prayers, although apparently left largely to the trial court's discretion. While, as stated, this court has not passed directly upon a request for such instruction, it has consistently condemned and held erroneous prayers which are mere abstractions. In *Marshall v. Haney,* 4 Md. 498, it was said: "The abstract proposition is undoubtedly true, that if the acceptance of this deed by Haney was the result of mistake, misrepresentation or fraud, he would not be compromitted by it. But it is equally true that unless there is evidence to support this legal proposition, it cannot be incorporated into the case. It is the duty of courts of justice not to moot questions, but to decide those which are really presented. Therefore any instruction which may be asked for by counsel, however correct in the abstract, should be rejected by the court, if unsupported by evidence properly in the cause." In *White v. Parks,* 154 Md. 199, 140 A. 70, 72, speaking through Judge Parke, we said: "The fact that a correct and abstract proposition of law has been permitted to go to the jury may not have been reversible error for the reason that, having no practical bearing, it has no prejudicial effect one way or the other, and on the same ground of its entire lack of utility its rejection is justified. The prayer on this record was a mere skeleton statement of an abstract rule of law and afforded no guidance for the jury. * * * The better rule is to reject abstract propositions of law, since their natural tendency is to confuse and embarrass the jury." In *Treusch v. Shryock,* 51 Md. 162, it was said: "The proposition presented by the appellants' second prayer is * * * a mere abstract one, and there was no error in refusing it." In *Moore v. McDonald,* 68 Md. 321, 12 A. 117, 118, it was said: "But we cannot approve the practice of granting prayers of this description. When the evidence has been admitted, the fact of its admission gives the jury the right to consider every fact in the case that is proven to their satisfaction. It is not the proper office of the court to call the attention of the jury to this or that fact, and inform

them that they may take it into consideration in making up their verdict. Such instructions, coming from the court, are apt to give undue weight and prominence to the fact thus called to their attention. It is a practice liable to abuse, and to mislead." *Hopper v. Callahan,* 78 Md. 529, 28 A. 385; *Frentz v. Schwarze,* 122 Md. 18, 89 A. 439; *Patterson v. Baltimore,* 127 Md. 239, 96 A. 458; *Coppage v. Howard,* 127 Md. 512, 96 A. 642; *Fait v. Bannon,* 127 Md. 698, 97 A. 880, where it was held that prayers which are mere abstractions of law are improper, although the principles announced may be correct; *Balto. & O. R. Co. v. Engle,* 149 Md. 152, 131 A. 151; *North Chesapeake Beach Land & Impr. Co. v. Cochran,* 156 Md. 524, 144 A. 505. We are not called upon to determine whether or not, if one or more of these prayers had been granted by the lower court, it would have been reversible error; but there was no error in their rejection. To compel instructions such as are contained in these prayers would be injecting a new practice into the trial of cases in this state, the evil effect of which would far outweigh any benefit to be accomplished. It would open up an entire new field of prayers in the trial of cases, which would more likely result in misleading than assisting the jury in arriving at a proper conclusion. Counsel for the parties might think one test of credibility was proper; the trial court might apply another, and this court still another; all of which are applied by the average man in testing the veracity or credibility of people with whom he comes in contact; and to segregate and emphasize one test above another would result in the same evil as of segregating facts in prayers, which practice has been uniformly condemned by this court. The reason for this condemnation is that it emphasizes, and thereby centers the jury's attention upon, the facts so segregated, to the exclusion of a just and fair consideration of all of the facts and circumstances in the case. There being no error in the rulings of the lower court, the judgment will be affirmed.

*Judgment affirmed, with costs.*