HARRY H. HOKE *v.* WILLIAM P. LAWSON,
POLICE COMMISSIONER
CHARLES C. NELSON *v.* SAME
JAMES A. McDANIEL *v.* SAME
[Nos. 38, 40, 41, October Term, 1938.]

248

*Decided August 3rd, 1938.*

The causes were argued, as of the April Term, before BOND, C. J., URNER, OFFUTT, PARKE, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Harry O. Levin* and *M. William Adelson,* with whom was *Paul B. Mules* on the brief, for Harry H. Hoke, Jr., appellant.

*William Saxon,* for Charles C. Nelson, appellant.

*Ellis Levin,* for James A. McDaniel, appellant.

*Herbert R. O'Conor, Attorney General,* and *Charles H. LeViness, III, Assistant Attorney General,* with whom was *Hilary W. Gans, Deputy Attorney General,* on the brief, for the appellee.

BOND, C. J., delivered the opinion of the Court.

The General Assembly, at its special session of 1937, adopted as one of the measures of a general enactment for raising revenue for aid to the needy, chapter 11, section 6, a provision for licensing gaming machines, to follow section 23 of article 56 of the Code, and to read:

"23A. No pin ball machine or game played with balls and plungers upon the insertion of a coin or token or any other machine or device so constructed or devised as to make the result of the operation depend in whole or in part upon the skill of the player, shall be kept, maintained or operated for the purpose of public entertainment or gain within the State of Maryland, unless a State-wide license has been previously obtained."

Keeping, maintaining or operating such machines without the licenses was made a punishable offense, but, with the licenses, made lawful. It was specifically provided that nothing in the section should "be deemed to make lawful the maintenance, operation or possession of any machine or device, the successful operation of which depends solely upon chance."

The appellants in the three cases argued together have been exploiting in Baltimore City slot machines, affording chances at prizes upon insertion of coins, with attachments designed to bring them within the statutory class of those which may be licensed, and to avoid the prohibitions of the gambling laws with particular reference to slot machines. See *Gaither v. Cate*, 156 Md. 254, 144 A. 239. Enforcement, or threats of enforcement, of the gambling laws have followed nevertheless, and the present cases have arisen upon bills in equity to restrain the police commissioner of the city from interfering with the machines and confiscating them. The chancellor issued interlocutory injunctions, but upon evidence subsequently taken concluded that the machines did not conform to the law, dissolved the injunctions, and dismissed the bills. An appeal has followed in each case.

The three machines involved are all essentially slot machines, by which players depositing coins in slots and

causing marked discs to revolve, take chances on the combinations of marks to be displayed by the discs when they come to a stop. The prizes, in coins or tokens varying according to the combinations, are delivered at outlets. To these essential elements have been added attachments to entitle the machines to be called pin ball machines or games played with ball and plunger, or machines or devices the result of the play on which is dependent upon skill, within the terms of the licensing statute. On Hoke's machine, called "Trap the Snake," after depositing the coin the player must pull a trigger which, "operating like a see-saw," throws a ball on the inside end of it up toward the mouth of a snake, which is in fact a metal tube. Striking a pin or tongue in the tube releases the coin and makes the machine ready for the ordinary play of such devices. The ball may miss, and in some machines of the same make in use it would then fall back to the trigger for other tries until the ball is put in the mouth, but the machine exhibited in the court below had a pin inserted to hold the ball from returning. With the ball in the mouth the player could then, by pressing a lever on the side, start three discs revolving. The trigger needs to be pressed, and the ball lodged in the snake's mouth again, to release winnings if any should be indicated on the discs when stopped. This feature of the trigger and pin is thought to make the machine a pin ball machine, one played with ball and plunger, and one requiring skill in the play. A second feature, designed to furnish the requirement of skill, is a contrivance which may be pressed on top to brake and stop the revolutions of the discs before they would die out of themselves.

With the deposit in Nelson's machine, either before it or after it, a player, in order to give the coin entrance into the operating parts, is required to propel a ball, by a plunger, against a target holding a pin in its center. Any number of tries may be made without additional coins until the target is hit. The testimony was that the plunger and target could be removed from the machine

without affecting the play on the discs. The coin having been let in, the lever is pulled and the discs set in motion to show a winning or losing combination of marks or emblems on stopping. Here again, pressure on a contrivance on top, in the shape of buttons, will stop the discs before they would stop of themselves, but while this interference must have an influence on the combinations, it appears by testimony that the player cannot by any skill he may acquire control the choice of combinations; that remains a matter of chance alone. The machine exhibited in the court below was in fact adjusted to pay out to players a maximum of only sixty nine per cent of the deposited coins in all, and by another adjustment could be made to pay out a maximum of seventy-six per cent. When a favorable combination appears on the stopped discs of this machine, the player must hit the target again with the ball to release the indicated winnings, which would be tokens differing in numbers with the different combinations. It is contended that the pin in the target, and the ball and plunger by which the ball is thrown toward it, bring the machine within all the descriptions contained in the licensing statute: pin ball, ball and plunger, and a machine the result of the play on which is dependent upon skill.

It is conceded that MacDaniel's machine, called "Silver Chief," would be one for a game of chance solely, except for a box attached at the side to require a play of skill. A player who gets a winning combination on the stopped discs is directed, in order to release his winnings, to shoot a ball into one of three holes inside the box, by means of a plunger. The machine exhibited was adjusted to pay out players a maximum of 77.1 per cent of the money deposited. The application for official approval and license described the machine as a pin ball machine, and there are pins in or about the holes in the attached box, not clearly placed in the testimony; but the witnesses do not treat them as important. Until the second day of the hearing of the testimony in the court below, after an interval of three days since the first day, the ball in the

box could be played and replayed with the plunger an indefinite number of times, without deposit of another coin, until it fell into the hole to release winnings indicated on the discs, and it was testified that the same condition existed in other machines of the make in use about the city. A detective sergeant assigned to examine another such machine at a distance from the center of the city found it was not necessary for him to touch the plunger and ball at all to receive any winnings during his experiments. In the three days before the second day of the hearing, mechanics altered the condition on the machine exhibited, arranging to prevent the return of the ball except by another start of play with another coin, and the alteration is relied on as making the machine, previously of doubtful lawfulness under the act, now lawful. This might raise a question whether the device, so altered after suit filed, could be regarded as the subject of complaint in the suit, and could be the subject of an injunction under the bill. See *Miller, Equity Procedure,* sec. 187. But the point may be passed. Even when repetition of shots by the ball and plunger is prevented, interference from anything in the box attachment can be avoided, and winnings released, by manipulations of pins about the holes, or by tilting the whole machine. These holes are three, in line, and winnings are released by a ball in the first hole; if it is shot further back the winnings, as the contrivance is now arranged, are not released, and the player gets nothing for the deposited coin. When tried in the court below the opportunity for the exercise of skill proved to be slight. The complainant deliberately tried to shoot into a losing hole and accomplished it only once in ten or twelve tries. The ball found its way into the winning hole despite his efforts. One of his witnesses, a representative of the manufacturer, succeeded in avoiding the winning hole only once in five tries. Success in releasing indicated winnings seems well assured.

The appellants, dividing the statute, contend that three separate kinds of machines are legalized by it: (1) A pin ball machine, (2) machines played with balls and

plungers, and (3) any other machines or devices so constructed or devised as to make the result of the operation depend in whole or in part upon the skill of the player, skill being required in the operation of the third group only. The phraseology of the third division, of any other machine or device, militates against that construction, for the word "other" seems to imply some element common to them all, and that, the element of skill mentioned. And the exclusion of machines the operation of which depends upon chance seems to amount to an express requirement that skill shall enter into the operation of those made lawful. The skill involved in pin ball machines as defined in the records is not apparent to all, but the construction contended for could not be adopted. Skill appears to be intended in all machines.

Both from descriptions by witnesses and by illustrations exhibited, it appears that pin ball machines, as known at the time of the enactment, were essentially like the familiar toy in which an inclined board, curved at the top, has pockets to receive balls rolling down, and pins standing at intervals to obstruct and deflect the courses of the balls, and, at the side, a plunger on a spring to be pulled out and let go to send balls up into play. Elaborations have been worked out but the play has been of balls sent up by plungers to find their way by gravity, among pins, to marked spots. The evidence tends to show, too, that in the expression, "pin ball machine or game played with balls and plungers upon the insertion of a coin," the Legislature must have had in contemplation one and the same type of machine or game. The preamble of the statute declares that "pin ball and other similar devices" are to be licensed and made lawful. And if the same type was not intended, then what was intended to be included in the game played by ball and plunger is otherwise left without description except that skill in the play is required.

The attachments adopted are, then, obstructions to the ordinary play of the slot machines, with contrivances to remove them, and devices for braking and stopping the

revolutions of the discs. They have no direct part in the play from which the decisions would follow. And we construe the enactment to have intended that skill should have a direct part in that play, not a part in removing or adding adventitious obstructions to it. For that one reason none of these attachments seem to the court to convert the machines into such as were intended to be made lawful. But they seem to fail of their purpose for other reasons, too. None of them produce pin ball machines by any available interpretation of that name, and the court could not find that the balls and plungers on the Nelson and McDaniel machines, if they might otherwise bring the games within the statutory permission, would require the necessary skill in the play. There is no part given to skill in the play when the attempts may freely be repeated until success is attained; with patience, it could always be attained without skill. And in the McDaniel machine, shooting into the winning hole appears to us to require no substantial degree of skill, but rather to be assured, for practical purposes, on any effort. And the contrivances on top of the Hoke and Nelson machines to brake and stop the discs, while they might enable players, by choosing the time and amount of their pressure, to stop them at or near the chosen places, would give them no choice of the combinations of marks or emblems to be shown on the discs. These marks or emblems do not follow in repeated sequences on the discs, and even if players could be quick enough with the eye and the hand to choose the stopping places, the combinations to be shown would still, as the court understands it, be left to chance solely. Unless skill enables a player to have some choice of the result it would seem to have no part in the game.

The evidence shows that a difficulty would stand in the way of issuing injunctions at present to protect any of the machines, with attachments designed to qualify them by merely requiring skill in the play. It appears that a very large number of gaming machines are in use: counsel in one case inform the court that from 500 to 1,000 makes of pin ball machines alone are to be

found. A variety of attachments exist, and variations in these are easily made, and are met with even on machines of the same make. As already stated, some of the machines exhibited in the court below in these cases have differed from others in use in the city, and the designers were ready, and offered the police commissioner or his staff, to arrange parts to come within the law as it might be interpreted. If the tests of lawfulness should be dependent on attachments so changeable, there would be a question how far any useful regulation of the action of the clerks and the police might be affected by injunctions concerning particular machines. The police would be left in doubt as to what, among machines so alterable, were the subjects of the injunctions and what were illegal variations. They would be under the necessity of watching and judging each machine, nevertheless, as best they might. Consequently, apart from other objections, the discretion which the courts exercise in issuing injunctions might be better exercised by withholding any action, unless the exploiters could first be required to fix in some manner the character of the devices which they wish protected, and to fix it within the law if possible. *Story, Equity Jurisprudence,* secs. 1292, 1293. But this observation brings us to another, and fundamental objection.

It is the office, and the undertaking of the statute to direct the licensing clerks, and also to guide the police in enforcement of the law, and so far as the wording may be ineffectual to do this the statute cannot be enforced. Further, as a penalty is provided for violation, it is also requisite that the owners or exploiters of the gaming machines or devices be given in the statute a reasonably clear test of compliance. Men of ordinary intelligence must not be left to guess at the meaning and application of the law. *Triner Corp. v. McNeil,* 363 Ill. 559, 2 N. E. (2nd) 929; *United States v. Cohen Grocery Co.,* 255 U. S. 81, 516; *Lewis Sutherland, Statutory Construction* (2nd Ed.) sec. 86; *Turner v. Lytle,* 59 Md. 199, 207. This present law, except in the inclusion of pin

ball machines or games played with ball and plunger, which, according to the evidence, appear to have a definite meaning, affords no description other than that skill must be depended upon in some part. Restriction to machines or devices partaking of the character of pin ball machines to some extent seems precluded by the words "any other machine or device so constructed or devised as to make the result depend in whole or in part upon skill of the player"; and lacking that restriction, no limit is placed upon the nature of the machines to be licensed. The requirement of skill is the only requirement for any conceivable machine or device, unless by an assumed legislative power the statute should be made more definite with another requirement. But "a court of justice cannot be permitted in any case to legislate." *Hughes' Case,* 1 Bland 46, 47. And skill is not sufficiently definite to give clerks and police a workable test. On the familiar pin ball machine, does the play depend in part upon skill? Does the result of spinning a coin ever depend upon skill? Does the result of spinning a roulette wheel? Opinions may differ on those questions. And what might be an element of skill in the play of a novel machine or device might be a question susceptible of nothing better than a guess, or an arbitrary dismissal of it.

There is a provision in the section that all the county court clerks and the clerk of the Court of Common Pleas in Baltimore City shall alike have the power to issue the licenses, and their licenses are to be "State-wide." And the machines permitted being so vaguely defined, the test so far a matter of opinion, various types might be acted upon differently, licensed or rejected, and there might be a conflict of rulings in effect in the State at large and in the same local jurisdictions. The difficulty confronting the police is plain.

The result would probably be that the question of lawfulness of one machine and another, and of many of them, would be referred to the courts for decision, instead of being disposed of, as the enactment intended, by the clerks. The courts are not intended to be the licens-

ing agencies if the clerks cannot deal with the questions presented by applications for licenses, ordinarily, at least, the statute fails of its purpose and is ineffectual. "It is impossible to dissent from the doctrine of Lord Coke, that acts of parliament ought to be plainly and clearly, and not cunningly and darkly penned." *Dwarris Statutes*, 652; *United States v. Cohen Grocery Co.*, 255 U. S. 81, 89, 41 S. Ct. 298, 300, 65 L. Ed. 516.

Upon these considerations, the court has come to the conclusion that the section is ineffectual and void so far as it undertakes to provide for licensing and making lawful any machines or devices other than pin ball machines or games of that character played with balls and plungers.

The designers and owners of two of the machines, consulted with the secretary of the police commissioner before leasing them out in numbers, and came to an agreement with him that the question of their lawfulness should be tested by a criminal prosecution on a charge of violating the gambling laws, and upon a trial of the test case, a jury acquitted the defendants of the charge. It is not contended that from this any foreclosure of the question of lawfulness resulted. *General Exchange Inc. Corp. v. Sherby*, 165 Md. 1, 6, 7, 165 A. 809. But a statement by the secretary that the department would accept the decision as determinative, and a preparation and leasing of many machines of the types in reliance upon the statement, are advanced as reasons for prevention of interference by the police now. Apart from a question of authority of the secretary, and possibly a question of similarity of the machines as fitted out at the one time and the other, there is in our system no such relation between the courts and the administrative officials as would render agreements by the latter effective to preclude the ordinary action of the courts in applying the law as they find it. An injunction could not be granted because of the position taken by the secretary, even if the department should have authorized it in any manner.

*Decree in each case affirmed, with costs.*